## Chicago and Eastern Illinois Railroad Company

### *v.*

### Justus Chancellor, Admr.

*Filed at Ottawa January 19, 1897—Rehearing denied March 9, 1897.*

1. Evidence—*that party killed at station by railroad train intended to become a passenger is material.* Evidence that a party killed by a train at a railroad station intended to take passage on one of the defendant's trains is material in an action against the railroad company for his death, and, if in the form of declarations, is admissible when part of the *res gestæ.*

2. Same—*declarations concerning prospective journey must be connected with the act of departure.* To be admissible in evidence as part of the *res gestæ* declarations of a party that he intended to take passage upon a railroad train must be connected with the act of departure.

3. Same—*when declarations are not admissible as res gestæ.* In an action against a railroad company for causing the death of a woman at its station, a remark made by the deceased to a neighbor, about an hour before her death, while performing her ordinary household duties, that she intended taking passage that morning on one of defendant's trains, is not admissible as *res gestæ*, to show her relation as passenger.

4. Appeals and Errors—*when court should instruct for defendant.* Where the evidence in a suit against a railroad company for negligent killing does not tend to prove the elements necessary to entitle the plaintiff to recover, the court should instruct the jury to find for the defendant.

Carter, J., dissenting.

*C. & E. I. Ry. Co.* v. *Chancellor*, 60 Ill. App. 525, reversed.

Appeal from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. Frank Baker, Judge, presiding.

This action was brought by appellee, as administrator of the estate of Josephine H. Johnson, deceased, to recover damages from appellant for causing the death of appellee's intestate. The declaration contains two counts, in the first of which it is alleged that while the decedent, at Kensington, in Cook county, was with all

due care and diligence in the act of walking from appellant's railway station up to and upon its passenger cars which were then and there waiting to receive her, the appellant so carelessly and improperly drove and managed another locomotive engine and train that it was moved between the passenger station and the passenger train while the passengers were then and there alighting from and mounting the said passenger train; that the said locomotive then and there struck the decedent and killed her. The second count is in substance the same, with the further averment that it was the duty of appellant to keep its track clear and provide a safe and suitable highway for the decedent to walk from its station house to its passenger cars, but that appellant made default therein, and the decedent was struck by an engine and cars moving between the passenger station and the passenger cars, and was killed. To this declaration the general issue was filed, and upon a trial by jury a verdict was returned for appellee in the sum of $5000. The trial court entered judgment on this verdict, which judgment, on appeal to the Appellate Court for the First District, was affirmed, whereupon this appeal was prosecuted to this court.

On the morning of the accident Josephine H. Johnson, appellee's intestate, went from her home to appellant's passenger station at Kensington about half an hour before the accident, and remained on the platform during that time. While she was there a suburban passenger train arrived from Chicago which ran only to Kensington station. After remaining a few minutes it went back to the city. A short time after, a passenger train arrived from Chicago and proceeded on its way south. Mrs. Johnson remained on the platform and did not take passage on a train in either direction. Meanwhile, during the time between the passing of these trains, a local freight train had been switching back and forth past the station, transacting the usual work of such trains, and

moving from one track to another to keep out of the way of other passing trains. It had been at this station about thirty minutes before the accident. About nine o'clock of this morning another passenger train, known as the "milk train," arrived, bound for Chicago, and had been standing at Kensington station from three to five minutes when the accident occurred. At this station appellant's railroad consists of two main tracks, commonly known as double tracks, and extending nearly north and south. The one on the east was the north-bound track and the west one was for south-bound trains. West of the south-bound track was appellant's regular station building, with its platform, and east of the north-bound track was a platform for the accommodation of passengers going to and from north-bound trains. The two main tracks are situated about eight feet apart. There is no platform between, but there is a cross-walk constructed of twelve-foot planks, extending east from the station building to the other platform east of the north-bound track. A few minutes before the arrival of the milk train the local freight had backed in on the north-bound track to permit the south-bound passenger to proceed, and it was still standing there, necessarily preventing the milk train from proceeding north when ready to start. This train carried a large number of milk cans for Kensington, and a number of minutes were consumed in unloading these. After the train had been standing there several minutes, and perhaps as long or longer than is usually consumed by passengers in alighting and boarding trains, said freight train proceeded to cross over from the north-bound to the south-bound track. There is a "cross-over" track by which this is accomplished. The north end of it is three hundred feet north of the station, and the track is one hundred and eighty-seven feet long. The local freight was headed south, with about fifteen cars behind it and four freight box cars ahead of the engine. The freight conductor, standing on the depot platform,

(the same where the decedent was standing,) signaled his train to proceed south over the cross-over track to the main south-bound track. The engineer whistled "off-brakes," the engine bell was rung, and the freight proceeded at a rate of about four miles an hour, pushing the four box cars ahead of the engine. A brakeman was stationed on top of the south box car and on the south end of it. The decedent was looking toward the milk train, or east from where she stood, according to the weight of the evidence, until the box cars ahead of the engine were within twelve feet of her, when she advanced hurriedly and stepped down from the platform to the track as though to cross to the milk train. A bystander on the platform and the brakeman on top of the advancing car shouted to her, but she either did not hear or paid no attention, and was struck by the cars and instantly killed. The accident occurred about nine o'clock in the morning, in June. It was not disputed but that it was a clear and bright day, and that there were no obstructions nor anything to have obstructed her view of the approaching train.

WILL H. LYFORD, WILLIAM J. CALHOUN, and JOSEPH B. MANN, for appellant.

THORNTON & CHANCELLOR, for appellee.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

The principal error assigned by appellant, and relied on as a reason for reversal of this judgment, is on the admission of improper evidence by the trial court. Over the objection of appellant a witness, Mrs. Laura Stangnan, was permitted to testify for appellee that she was at the house of Mrs. Johnson between seven and eight o'clock on the morning in question, and that Mrs. Johnson was getting ready to go to the city to get a dress, and that she said she was going on the nine o'clock train

because that would take her near to Siegel & Cooper's. At the time this was said she was getting her children ready to go to school. The sole object of this evidence was to show that the decedent intended to become a passenger on appellant's train. This became a material fact in the case, for the reason that if Mrs. Johnson sustained the relation of a passenger at the time of the accident, then appellant was bound to exercise the highest reasonable and practicable degree of care for her safety. (*Chicago and Alton Railroad Co.* v. *Pillsbury*, 123 Ill. 9; *Chicago and Alton Railroad Co.* v. *Arnol*, 144 id. 261.) If she did not sustain the relation of a passenger or intended passenger, then only ordinary care was required of appellant. It thus became an important question of fact to be determined whether the decedent sustained the relation of an intended passenger on appellant's train.

The evidence of Mrs. Stangnan, above cited, as to the acts and declarations of decedent an hour before the accident, was practically all that was relied on by appellee to show her relation as a passenger. To controvert this, it was shown by the only persons in charge of appellant's ticket office that she purchased no ticket that morning, and after her death those who took immediate charge of her effects found no ticket and only a few pennies in money in her purse; also, that during the thirty minutes she had been at appellant's station one regular passenger train had departed for Chicago and one in the other direction. The question for consideration is, whether this evidence was part of the *res gestæ.* If so, it was properly admitted by the trial court, and if not, it was error.

Courts have not always found it without some difficulty of determination as to whether or not particular acts or declarations were so nearly contemporaneous or coincident with the act itself as to become part of the *res gestæ.* The rule is thus laid down by Greenleaf: "Declarations, to become a part of the *res gestæ*, must have been made at the time of the act done which they are

supposed to characterize, and have been well calculated to unfold the nature and quality of the facts which they were intended to explain, and so to harmonize with them as obviously to constitute one transaction." Greenleaf on Evidence, sec. 108, note 1.

One of the cases relied on to support the contention of appellee that this evidence was admissible as part of the *res gestæ* is *Lake Shore and Michigan Southern Railway Co.* v. *Herrick*, 49 Ohio St. 25. In that case a witness was permitted to testify that on the morning defendant in error left his hotel he said to witness, who was a clerk, that he was going to Collins. He was injured while on his way to the train that ran to Collins. In its opinion the court says: "Was his declaration that he was going to Collins competent evidence of that fact? That depends on whether the declaration was contemporaneous with and explanatory of the act of departure. One departing from home may have in view any conceivable place or any conceivable purpose as his destination or object. The act of departure is thus in itself of the most ambiguous character. It does not afford the slightest clue to the object of the journey. It is natural and usual, according to the natural experience of mankind, that the party should say something respecting his departure of an explanatory character. Declarations thus made are part of the act itself."

Where the evidence shows the party is about to start on a journey, from common experience we know it is usual and natural that something is said by the party relating to the departure, and of a character indicative or explanatory. For such declarations to be admissible in evidence as part of the *res gestæ* they must be made in connection with an act proven, as in the case above cited. The rule is, that the *res gestæ* generally remains with the *locus in quo*, and it does not follow the parties after the principal act is completed. The authorities to which we are cited in argument are principally those in which the

declarations sought to be considered were made after the act or injury with which they are attempted to be connected. The rule is, in determining whether or not declarations made before or after the principal act are to be considered as part of the *res gestæ*, lapse of time is taken into consideration, and such declarations made after the principal act will not be considered as part of the *res gestæ* if there is any change from the place of occurrence of the principal act or in the condition of the parties. The evident reason of the rule is, that in such event an opportunity for fabrication might be given or testimony might be manufactured by interested parties. Whether or not such act or declarations will be so considered must depend upon the circumstances of each case. The real test is, whether the principal act and the declarations sought to be considered as part of the *res gestæ* are separated from each other by such a lapse of time as to render it probable that the parties are speaking from designing purposes rather than instinctive impulse. It can be stated as the general rule, that anything said or done before the principal act occurred or was within the contemplation of the parties cannot be regarded as part of the *res gestæ*, although only separated by the least possible span of time, unless it tends to explain and unfold the principal act by the undesigned act or declaration of the party, for the reason that such declaration or act could not be said to throw any light upon the motives of the parties. A person desiring to commit suicide might, an hour before the act, declare that he intended to become a passenger upon a train, when, as a matter of fact, no such intention existed in his mind, but the only intention there existing might be to go to a passenger station where trains were passing, for the purpose of taking his own life. Such declaration, therefore, made an hour or any other space of time previous to the act of departure, itself would afford no light upon his intention, and could not be considered as evidence unless immediately con-

nected with the act of departure. In the case of *Lake Shore and Michigan Southern Railway Co.* v. *Herrick, supra,* the declaration was connected with the act of leaving the hotel. The declaration was not made in connection with any preparation for a space of time previous to the act of departure for the train, but was immediately connected with the act of departure itself. In the case at bar, at the time the declarations which were sought to be admitted as evidence were made, the decedent was getting her children ready for school and performing her ordinary household duties, and while so doing she declared an intention of going to the city of Chicago. This declaration was not connected with the act of departure itself, and was not admissible. To admit such declaration as constituting a part of the *res gestœ* would, on the same principle, hold admissible a like declaration made the day or a week before. Such declaration, therefore, made to the witness Stangnan, was not competent as part of the *res gestœ*, and it was error to admit it.

There is another error in this record also which must cause a reversal of this judgment. At the close of plaintiff's evidence a motion was made by defendant below to withdraw the case from the jury and instruct the jury to find for the defendant. The trial court took the motion under advisement until the following day and then refused it, to which appellant excepted. Two elements necessary for appellee to show in this case were, negligence on the part of appellant as charged in the declaration and which caused the death of appellee's intestate, and also that the deceased was herself, at the time of the accident, in the exercise of due care and caution for her own safety. If both these elements were not established the above motion made by defendant should have been allowed, and it was error to refuse it. In our view of this case neither of these important and necessary elements was established, nor was there evidence tending to prove either proposition. Before the freight train

in question was moved the proper signal was given by the conductor in charge, who stood near the decedent and saw that the track was open; a whistle was sounded and a bell rung; a brakeman was stationed on the end of a box car nearest where danger might be expected, if any, and the train moved at a slow speed,—perhaps no faster than a man ordinarily walks. The servants of appellant had no reason to suppose that when the train had approached within a few feet of this woman she would step upon the track in front of it. We know of nothing which appellant or its servants could have done, within reason, the omission of which shows negligence on their part. The decedent, on the contrary, was guilty of such negligence as contributed to her death. She had been at this station thirty minutes, where this train had been switching back and forth. The train had moved three hundred feet approaching the platform, and while part of this distance was on the cross-over track, at least one hundred feet was on the track where she finally stepped. The morning was clear and bright, and no objects intervened to prevent her seeing so large an object as a slowly and steadily approaching box car. Under all the circumstances she appeared to act in a manner so negligent as to indicate an utter disregard for her own safety, instead of exercising that due care and caution which would entitle appellee to recover. The motion made to instruct the jury to find for defendant should have been allowed.

For the errors indicated in this opinion the judgment is reversed and the cause remanded to the circuit court of Cook county.                    *Reversed and remanded.*

Mr. JUSTICE CARTER: I do not concur in the conclusion reached by the court in this case.