# Commonwealth *v.* Palma, Appellant.

*Criminal law — Murder—Evidence—Declarations—Res gestæ — Statement on leaving home.*

1. On the trial of an indictment for murder, declarations made by deceased to his wife when leaving home about an hour previous to the time he met his death, to the effect that he intended to meet defendant are admissible as part of the rest gestæ.

2. If made at a time previous to leaving, the declaration amounts merely to a statement of a purpose to do a future act and is not competent as explanatory of the act itself, inasmuch as the person in the meantime may have changed his purpose.

*Criminal law—Murder—Charge—Context—Inadequacy of charge —Failure to ask for instructions—Appeal.*

3. In a murder trial, where the evidence for the Commonwealth is circumstantial and voluminous, and that of the prisoner, setting up an alibi, is simple in character and brief, the charge will not be reversed on appeal as inadequate on the ground that it referred fully to the Commonwealth's evidence and insufficiently to that of defendant, where the court gave brief but correct and sufficient instructions as to the alibi, and at the close asked if any matter had been omitted, to which no response was made.

4. A portion of a charge cannot be alleged as error on the ground that it gave the jury a certain impression, where a careful reading of the language immediately preceding shows that the statement was not susceptible of the construction for which the prisoner contended.

*Criminal law—Murder—Witness under indictment—Credibility —Charge.*

5. In a murder case, where a witness for the Commonwealth is alleged to have been indicted as an accessory for the purpose of attacking his credibility, it is not reversible error for the trial judge, if it developed from the testimony that there was nothing to implicate the witness, to refer to this fact, in view of the attack on his credibility, by showing the pending indictment.

Argued October 4, 1920. Appeal, No. 298, Jan. T., 1920, by defendant, from judgment of O. & T. Lackawanna Co., Oct. T., 1919, No. 18, on verdict of guilty of murder of the first degree in case of Commonwealth v. Frank Palma. Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER, WALLING, SIMPSON and KEPHART, JJ. Affirmed.

Indictment for murder. Before EDWARDS, P. J.

The opinion of the Supreme Court states the facts.

Verdict of guilty of murder of the first degree upon which judgment of sentence was passed. Defendant appealed.

*Errors assigned* were various rulings and instructions appearing by opinion of Supreme Court.

*A. A. Vosburg,* with him *Robert P. Silverstein,* for appellant, cited, as to res gestæ: 12 Cyc. 429; and 24 Am. and Eng. Enc. L. (2d ed.) 678, and cases there cited.

*Harold A. Scragg,* Assistant District Attorney, and *Frank P. Benjamin,* District Attorney, for appellee, cited, as to res gestæ: Com. v. Gentry, 5 Pa. Dist. R. 703, by YERKES, P. J.; Klein v. Franklin Ins. Co., 13 Pa. 245, 249; Dodge v. Bache, 57 Pa. 421, 424; Com. v. Webster, 59 Mass. 295; and Hunter v. State, 40 N. J. L. 495.

OPINION BY MR. JUSTICE FRAZER, December 31, 1920:

Defendant appeals from a conviction of murder of the first degree. The questions raised by the assignments of error relate to the admissibility of evidence and to parts of the charge.

The first and second assignments complain of the action of the trial judge in the admission in evidence (and in referring to it in his charge) of a declaration of Sposito, the victim of the crime, made to his wife when leaving home about an hour previous to the time he met his death to the effect he intended to meet defendant and Frank Renda, the two being subsequently jointly indicted and the latter acquitted, who desired to see him at a near-by saloon. Deceased was seen shortly after leaving his home in company with Palma and Renda near the place where the crime was committed, thus showing his express intention was carried out. The defense being an alibi, the evidence in question undoubtedly had considerable weight with the jury, especially as the trial judge specifically referred to it in his charge. The Commonwealth contends the declaration was admissible as part of the res gestæ.

The general rule is that when the motive, intent or purpose in doing an act is in question, whatever is said or done at the time from which a motive may be inferred, or which tends to show the intent or purpose with which it is done is part of the res gestæ; accordingly, if an act

committed is relevant, explanatory declarations made at the time are admissible as part of the act itself: Greenleaf, Ev., section 108; Wharton, Ev., section 262. And where material to show the purpose or reason for the departure of a person or of an act done by him, his declaration of his purpose or reason for so doing made at or about the time, if made in a natural way and without circumstances of suspicion, is admissible as original evidence: Greenleaf, Ev., section 108; 10 R. C. L. 974-978; Mathews v. Great Northern Ry., 81 Minn. 363, and cases cited; Central Georgia Ry. v. Bell, 187 Ala. 541; Ry. Co. v. Herrick, 49 Ohio 25. In the case last cited it was said: "One departing from home may have in view any conceivable place, or any conceivable purpose, as his destination or object. The act of departure is thus in itself of the most ambiguous character; it does not afford the slightest cue as to the object of the journey; it is natural and usual—according to the common experience of mankind—that the party should say something respecting his departure, of an explanatory character. Declarations thus made are a part of the act itself."

In the application of the above rule it is, of course, necessary that the declaration be made at or about the time of doing the act, that is, coincident or contemporaneous with the act of departure. If made at a time previous to leaving, the declaration amounts merely to a statement of intention to do a future act and is not competent as explanatory of the act itself, inasmuch as the person in the meantime may have changed his purpose. An illustration of the distinction between the case of declarations made at the time of departure, as in the cases above cited, and those made at an earlier time, is found in Chicago & Eastern Ill. R. R. v. Chancellor, 165 Ill. 438. There declarations of intention to visit a distant city were made an hour before the time for departure of the train and at the time declarant was preparing her children for school. In holding such decla-

ration not competent to prove declarant a passenger on the train in question, the court said (pages 443, 445) : "Where the evidence shows the party is about to start on a journey, from common experience we know that it is usual and natural that something be said by the party relating to the departure, and of a character indicative or explanatory.  For such declarations to be admissible in evidence as part of the res gestæ they must be made in connection with an act proven......In the case at bar, at the time the declarations which were sought to be admitted as evidence were made, the decedent was getting her children ready for school and performing her ordinary household duties, and while so doing she declared an intention of going to the City of Chicago. This declaration was not connected with the act of departure itself, and was not admissible.  To admit such declarations as constituting a part of the res gestæ would, on the same principle, hold admissible a like declaration made the day or a week before."

The declarations offered in the present case were made at the time deceased was on the point of leaving home and were competent as explanatory of the purpose of his departure.

The third, fourth and seventh assignments allege the charge was inadequate and unfair in that it referred fully to the evidence and theory of the Commonwealth, while that of defendant was insufficiently discussed. Before commenting on the evidence the trial judge stated it was not his intention "to go over all the evidence" and that it was the duty of the jury to consider the testimony of every witness.  The testimony offered on behalf of the Commonwealth was circumstantial in character and considerable in volume, while, on the other hand, the defense being an alibi was necessarily simple in character and the witnesses called to establish defendant's presence at another place at the time the crime was committed not numerous.  In referring to the defense the court said: "The defendants tell you that they were not

where the witnesses for the Commonwealth placed them on the night of the 24th of April; that they had gone home, I think one of them arriving home at 8 : 45 and the other about half past eight, but at any rate, it amounts to what is known in law as an alibi, that is that they were not at the place where the murder was committed at the time it was committed, but that they were in their homes. Several witnesses, some of them related—but at the same time they may be telling the truth—several witnesses corroborate their story as to their whereabouts from half past eight until about quarter after nine or until they retired to bed," and affirmed all of defendant's fifteen points, the third being as follows: "While the defendant must sustain an alibi by the fair weight and preponderance of the testimony, this does not mean that the burden of proving the defendant guilty beyond a reasonable doubt is shifted from the Commonwealth. This burden remains with the Commonwealth through the entire case and never shifts. The evidence as to the alibi may be sufficient, if believed, to raise a reasonable doubt in the minds of the jury as to the guilt of the defendant, and if any juror has such a reasonable doubt fairly arising from the whole evidence it is his duty to vote to acquit the defendant." The jury were further instructed they were the sole judges of the credibility of the witnesses and were to take into consideration the appearance of the witnesses, their manner of testifying, the extent to which corroborated or contradicted by other testimony and from all these matters decide whom they were to believe. At the close of the general charge counsel were asked if any matter had been omitted or overlooked by the court, to which no response was made. Considered as a whole, the charge was fair and not open to the objection complained of.

The fifth assignment complains of the language of the court in referring to the question of motive. Evidence had been given tending to show defendants were members of a society which had condemned deceased for acts

of omission in his dealings with his employer. In referring to the testimony relating to this matter, the court said: "and therefore that the two [defendants] proceeded to execute judgment against him which resulted in the killing of Sposito. I am mentioning that to you because it is in the case." Appellant argues the jury may have understood from this language that the court was of the opinion defendants did "execute judgment." A careful reading of the language immediately preceding that objected to convinces us the statements were not susceptible of the construction for which appellant contends.

The sixth assignment complains that the trial judge, in referring to a witness, Baggetti, called by the Commonwealth, who had been indicted as an accessory to the crime, said: "There is nothing in the evidence in the case, from the beginning to the end, which connects Baggetti with the murder of Sposito, and you may come to the conclusion—it is all a matter for you—that this testimony is not open to the same kind of attack as the testimony" of other named witnesses. It was shown that Baggetti was under indictment for the apparent purpose of attacking his credibility. As the indictment was pending at the time of the trial of defendant, it was not improper for the trial judge, if it developed from the testimony that there was nothing to implicate the witness, to refer to this fact, in view of the attack on his credibility, by showing the pending indictment. The court left to the jury to say whether or not there was testimony in the case connecting the witness with the crime and affecting his credibility on the ground stated.

The assignments of error are overruled, the judgment of the court below affirmed and the record remitted for the purpose of execution.