## MISSOURI STATE LIFE INS. CO. v. MAKIVER.

## EQUITABLE LIFE ASSUR. SOC. OF UNITED STATES v. SAME.

(Circuit Court of Appeals, Third Circuit. March 5, 1925.)

No. 3193.

**1. Evidence ⟨⟩121(1) — Rule for admitting declarations as part of res gestæ, stated.**

Declarations, to be admissible as part of res gestæ, must be spontaneous utterances springing out of transaction itself and so related thereto as to be part thereof, and not result of premeditation, reflection, or design, and the element of time, though important, is not conclusive.

**2. Evidence ⟨⟩123(9)—Declarations by insured's wife held not admissible as part of res gestæ relating to shooting of insured by her.**

Wife's statement, after shooting husband, that she had caught him and a woman in the act, meaning act of adultery, *held* not admissible as part of res gestæ to support defense that insured's death resulted from violation of law, where it was made in response to question, and after she had made several other statements in conflict therewith.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; J. Whitaker Thompson, Judge.

Actions by Harry J. Makiver, administrator pendente lite of Oscar W. R. Rosier, deceased, against the Missouri State Life Insurance Company and against the Equitable Life Assurance Society of the United States. Judgments for plaintiff, and defendant's motion for new trial denied in each case by the District Court (296 F. 715), and defendants bring error. Affirmed.

Robert J. Sterrett, of Philadelphia, Pa. (Alexander & Green, of New York City, and Jourdan & English, of St. Louis, Mo., of counsel), for plaintiffs in error.

John B. Hannum, Jr., of Chester, Pa., W. Roger Fronefield, of Media, Pa., William S. Connor, of St. Louis, Mo., and John R. K. Scott, of Philadelphia, Pa., for defendant in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. Oscar W. R. Rosier was shot on January 21, 1922, by his wife, Kathryn Rosier, and died shortly thereafter. One of the defendants below, the Missouri State Life Insurance Company, issued three policies of insurance on the life of the deceased, and the other defendant, the Equitable Life Assurance Society of the United States, issued one policy on his life. One policy, for $7,500, was for accidental death. The other three were ordinary life insurance policies, each for $10,000, and contained a double indemnity provision for accidental death as follows:

"If death results independently and exclusively of all other causes from bodily injuries effected directly from external, violent and accidental means, within 90 days from the happening of such injuries, of which, other than in the case of drowning, there shall be visible contusion or wound on the exterior of the body, except that this double indemnity will not be payable if the insured's death shall result from suicide, whether sane or insane, or any attempt thereat, sane or insane, or directly or indirectly, wholly or in part, from poisoning, infection, or any kind of illness or disease, or from any violation of law by the insured."

There were four suits, three against the Missouri State Life Insurance Company and one against the Equitable Life Assurance Society of the United States. All four suits were combined, tried and argued together, and will be disposed of in this opinion, for the facts and the question of law are practically the same in all four cases. Ten thousand dollars in each of the three life policies was paid, but the payment of the policy for accidental death and of the double indemnity in the other three is resisted on the ground that the insured's death resulted from the violation of law by him, in that he was shot by his wife while in the act of committing adultery. This is the sole ground of defense. It is based upon the statement of Mrs. Rosier made to newspaper reporters some time after the shooting. In reply to the question of why she shot him, she said: "When I was in the Hahnemann Hospital having my baby they were running around together. To-day I came in and caught them right in the act." This was admitted over objection under the rule of res gestæ and was the only evidence tending to show that the insured's death resulted from the violation of law. The learned trial judge gave binding instructions in each case for the plaintiff, on the ground that the above statement did not show that the deceased died from the violation of law.

A motion for a new trial was argued before Judges Thompson, Dickinson, and McKeehan, sitting in banc, and after consideration they concluded that the statement of Mrs. Rosier was not admissible under the rule of res gestæ. Accordingly they held

that binding instructions were proper, not on the ground, however, that the evidence of adultery was not sufficient to submit to the jury, but on the ground that the statement of Mrs. Rosier was erroneously admitted, and so there was no evidence on which to base the defense. Consequently the rule for a new trial was dismissed.

The real question to be determined is whether or not there was any evidence which should have been submitted to the jury from which it could have found that Rosier's death resulted from any violation of law by him. Admittedly, unless the statement of Mrs. Rosier is admissible under the rule of res gestæ, there is no evidence to support the defense.

[1] The admission of testimony under the rule of res gestæ is an exception to the hearsay rule. The principle upon which such evidence is admitted is that, under certain external circumstances of shock, a stress of nervous excitement may be produced which seals the reflective faculties and removes their control, so that an utterance which then occurs is a spontaneous and sincere response to the actual sensations already produced by the external shock. Statements made under such circumstances are presumed to be as veritable as the fact itself in connection with which they are spoken and would derive no enhancement of their credibility from the oath of the declarant. Section 747, Wigmore on Evidence; Mitchum v. State, 11 Ga. 621. A declaration admissible under this rule is so connected with the very transaction as to form a part of it. When the declaration is not so related to the occurrence as to form a part of it, it is the declarant's account of the fact, and is inadmissible. Hanover Railroad Co. v. Coyle, 55 Pa. 396, 402; Keefer v. Pacific Mutual Life Insurance Co., 201 Pa. 448, 456, 51 A. 366, 88 Am. St. Rep. 822. While the element of time is an important element, it is not decisive, for no fixed measure of time or distance from the main fact can be established as a rule to determine what shall and what shall not be part of the res gestæ. Meridian Railroad v. O'Brien, 119 U. S. 99, 107, 7 S. Ct. 172, 30 L. Ed. 299; Commonwealth v. Werntz, 161 Pa. 596, 29 A. 272. Whatever may be the length of time, all authorities are unanimous that the declaration must be the spontaneous utterance created by or springing out of the transaction itself, and so related to it as to be in reality a part of it, and not the result of premeditation, reflection, or design. Commonwealth v. Palma, 268 Pa. 434, 112 A. 26; Riley v. Carnegie Street Co., 276 Pa. 82, 119 A. 832; section 162, Greenleaf on Evidence (16th Edition).

[2] Measured by these rules, was this declaration admissible? Early after the shooting, and before the statement in question was made, Mrs. Rosier made several other statements. To one of the police officers she said: "I did it; I must have been crazy." In the presence of another, she said to Rosier, while he was lying wounded: "Daddy, Daddy, why did you die? I am sorry; I am sorry." Neither in these nor in several other statements which she made soon after the shooting did she intimate that she shot him because he was violating any law. These statements rather repel such a conclusion. But sometime between 15 and 30 minutes after the shooting, Mrs. Rosier was taken into a back office by an officer, and a reporter, who was charged with the duty of getting a story for his paper, "asked her why she shot these people, and she said: 'When I was in the Hahnemann Hospital having my baby, they were running around together. To-day I came in and caught them right in the act.'" This is so different from any statement that she had made before as to suggest that it is the result of reflection and is self-serving. It is her justification for shooting. It is a defense based upon the "unwritten law," a carefully reasoned statement offered as an explanation and justification for what she did. In other words, it is not a spontaneous utterance springing out of the shooting and so related to it as to be a part of it. To admit this statement would violate the principle upon which the rule of res gestæ rests. With this statement out of the evidence, there is nothing on which to base the defense. The direction of the verdict therefore was proper.

The conclusion which we have above reached renders it unnecessary to consider the other questions raised by the writ of error.

The judgment of the District Court is affirmed.