## WICKER et al. v. SCOTT et al.

Circuit Court of Appeals, Sixth Circuit. December 13, 1928.

Nos. 5048–5050.

Ben B. Wickham, of Cleveland, Ohio (Boyd, Cannon, Brooks & Wickham and J. H. Smart, all of Cleveland, Ohio, on the brief), for plaintiffs in error.

Ashley M. Van Duzer, of Cleveland, Ohio (Dustin, McKeehan, Merrick, Arter & Stewart and L. B. Davenport, all of Cleveland, Ohio, on the brief), for defendants in error.

Before MACK, MOORMAN, and HICKS, Circuit Judges.

MOORMAN, Circuit Judge. These cases grow out of a collision of an automobile with a truck. John Smart was the owner and driver of the automobile. There were four other occupants of the car. Three of them, Rose K. Smart, Augusta W. Smart, and Martha Wicker, with John Smart, brought suit against E. H. Scott and the E. H. Scott Transportation Company, claiming that the negligence of their agent in charge of the truck resulted in the collision. The cases were consolidated and tried together in the lower court, where there were verdicts and judgments for the defendants. Rose and Augusta Smart and Martha Wicker have prosecuted error.

The main error insisted upon relates to that part of the charge which dealt with the duty of the occupants of the car other than John Smart. After telling the jury that the negligence of John Smart could not be imputed to any of the others, the court said:

"But, however, that does not relieve a passenger in an automobile from the exercise of his or her senses to the extent that an ordinarily careful and prudent passenger would be accustomed to exercise those senses under the same or similar circumstances. In other words, the passengers in automobiles are not permitted to sit supinely by in a machine and exercise no vigilance for their own safety and protection; and the duty is upon them to keep a lookout ahead in so far as their position in the car will permit them to do so, and to warn the driver if and when any obstacles, obstructions or danger is apparent to them."

The charge is correct in so far as it placed upon these plaintiffs the duty of exercising the care that an ordinarily careful and prudent person would exercise under the same or similar circumstances. That is a duty that constantly attends one. Whether it requires the doing of specific acts depends upon the circumstances. There are situations in which it might demand that a guest or passenger keep a constant lookout ahead and warn the driver in case of danger from obstructions or otherwise—such as where there are dangers incident to operating the car, which are known to the guest or passenger, and which the driver alone cannot reasonably be expected to discover and guard against. Rebillard v. Minneapolis, St. P. & S. S. M. R. Co. (C. C. A.) 216 F. 503, L. R. A. 1915B, 953. But these were not the circumstances in this case. Smart was familiar with the streets, and there is nothing in the record to show that he was careless or incompetent, or that those accompanying him ought to have expected that he would not safely operate the car. In this situation the court could not say, as a matter of law, that the passengers should have kept a lookout ahead at all times, and warned the driver if obstacles or obstructions appeared in front of them. It was for the jury to determine whether the exercise of ordinary care required this to be done. Grand Trunk R. Co. of Canada v. Ives, 144 U. S. 408, 12 S. Ct. 679, 36 L. Ed. 485; Canadian Northern R. Co. v. Senske (C. C. A.) 201 F. 637; Southern Pacific Co. v. Wright

(C. C. A.) 248 F. 261. The jury might well have thought that it did not.

It is further contended by plaintiffs that the court erred in refusing to admit in evidence, as a part of the res gestæ, a conversation between the witness Sedgly and the driver of the truck. This witness had passed the truck in his car, and when the collision occurred stopped his car and came back. An unlighted lantern had been found near the truck after the accident. The witness would have testified, if permitted, that "within a minute and one-half after the accident" he said to the driver of the truck, "If you had had that light on there this accident would not have happened;" that the driver said, "I did have this lantern;" and that witness said, "How do you account for it being cold as it is?" to which the driver made no reply.

In determining what is or is not admissible as evidence under the res gestæ rule, the element of time is important, but not controlling. The controlling thing is that the act or declaration must be a spontaneous thing, springing out of the transaction itself before there has been time for reflection or premeditation. Peirce v. Van Dusen (6 C. C. A.) 78 F. 693, 69 L. R. A. 705; Standard Oil Co. of New York v. Johnson (C. C. A.) 299 F. 93; Missouri State Life Insurance Co. v. Makiver (C. C. A.) 4 F.(2d) 185; Ætna Co. v. Licking Co. (6 C. C. A.) 19 F.(2d) 177. The only thing that occurred between Sedgly and the driver that could have been helpful to plaintiffs, if admitted in evidence, was the driver's silence when asked how he accounted for the lantern being cold. While this was closely connected with the collision in point of time, it had none of the marks of an unpremeditated act, done under the stress of excitement. It was something done in deliberation. Smart had asked the driver for his name, and the driver had refused to give it, but had said, "There is the name of the truck; that's enough for you." The driver was thinking of consequences. He was acting deliberately. When Sedgly came up and said, "If you had had a light on there, this accident would not have happened," the driver said that he had the lantern. Pursuing the matter further, Sedgly wanted to know why the lantern was cold. The driver, evidently knowing that he was under no obligation to offer an explanation to Sedgly, did what a thoughtful and deliberate person, wanting to avoid a controversy with a bystander, would naturally do, he refrained from further comment. This was not the act of one who was distrait, or laboring under excitement, but was a deliberate act, which, in our opinion, was not a part of the res gestæ.

It is argued for Scott that, whatever may be the decision of this court on the other points involved, the judgments must be affirmed as to him, upon the ground that Haberman, who was in charge of the truck, was in no sense his agent or employee. Counsel have contented themselves with referring to the evidence on this subject without citing any authority to support their contention. The accident occurred on December 27, 1922. On November 28, 1922, the transportation company was organized under the laws of Pennsylvania to take over and operate the truck line that Scott had theretofore operated. It is said to have had a board of directors, which held regular meetings. Scott leased to it a number of trucks that he had been using, among them the truck in question. The company had no assets, except some trailers, which were transferred to it by Scott in exchange for its capital stock. On December 2, 1922, it opened an account with a local bank, and receipts from the transportation business were placed in this account, but were then turned over to Scott. Scott paid all the bills, and continued to do so until May or June of 1923. It does not appear that the company had qualified on December 27th to do business in Ohio. G. C. Ohio, §§ 183, 184. Wheeler, an employee of the company, and the only witness who testified on that point, thought that it had not qualified to do business at that time.

On this state of facts, the question is: Who had the right, at the moment, to control the doing of the act complained of? Was it the transportation company alone, or was it Scott, or both Scott and the transportation company? Byrne v. Kansas City, Ft. S. & M. R. Co. (6 C. C. A.) 61 F. 605, 24 L. R. A. 693; Brady v. Chicago & G. W. R. Co. (C. C. A.) 114 F. 100, 57 L. R. A. 712. It must be admitted that the transportation company was a distinct entity; but it is also to be considered that it had no authority, at that time, to operate a truck line in Ohio, not having qualified under the statutes to perform that service in the state. It may be that such qualification was not necessary to the lawful employment of Haberman as a truck driver, but it was a requisite to the company's authority to operate a trucking business, and therefore its power lawfully to control a driver while engaged in that business. Scott had previously operated the business under his own name, had organized the transportation company, and was the owner of its entire capital stock. He was in fact then operating under the name of a corporation which had no authority itself to operate. He had actually hired Haberman before the corpora-

tion was organized, and Haberman continued after it was organized to do the same work, for the same pay, derived from the same source. In our opinion, he was under the control of Scott, or at least under the joint control of Scott and the transportation company.

The judgments are reversed, and the causes remanded for new trials.