| 67 | 355 |
| 154 | 603 |
| 67 | 355 |
| 33 SC | 243 |

## Norristown *versus* Moyer.

1. Where a street in an incorporated town has been opened and graded by the town authorities and under their jurisdiction, although a portion of it may have been conceded as an easement to a railroad, the authorities are not relieved from the obligation to remove dangerous nuisances.

2. The use by a citizen of public ways is that of transit only, with such

[Norristown *v.* Moyer.]

stoppages as business, necessity, accident or the ordinary exigencies of travel may require. Per Ross, J., of C. P., approved by S. C.

3. Loungers who occupy the public highway are obstructions of the public right of way and nuisances. *Id.*

4. A railroad by ordinance of the town council and Act of Assembly was laid upon a street; the plaintiff loading a cart on the railroad track from a car was in the street for a lawful purpose. *Id.*

5. The plaintiff whilst loading his cart was injured by the falling of a pole in the street, erected by citizens years before, the pole having become rotten. *Held,* that it was the duty of the town to have had the pole removed and they were liable for the injury to the plaintiff, whether the neglect was wilful or not. *Id.*

6. It was not necessary that the town should have had notice of the condition of the pole. *Id.*

7. It was not material that the pole was in such part of the road as not to obstruct the travel. *Id.*

8. After the plaintiff was hurt money was raised by charitable subscription and paid to him ; this was not to be taken into consideration in estimating damages. *Id.*

January 16th 1871.   Before THOMPSON, C. J., READ, AGNEW, and WILLIAMS, JJ.   SHARSWOOD, J., at Nisi Prius.

Error to the Court of Common Pleas of *Montgomery county :* Of July Term 1870, No. 128.

This was an action on the case, brought April 9th 1869, by Joseph Moyer against the Burgess and Town Council of the Borough of Norristown.

The declaration was, that the defendants had permitted to be erected in Washington street, a public highway in Norristown, a large pole, and permitted the same to continue till it became rotten, to the nuisance of the citizens, &c.; that the plaintiff was employed in unloading lumber on the street, and whilst so employed the pole broke and fell upon him, broke one of his arms and did him other great injuries, &c.   It appeared, by the admitted facts in the case, that Washington street was one of the legally laid-out and opened streets in Norristown, that in 1833, by permission of the council, The Philadelphia, Germantown and Norristown Railroad Company located and constructed their road through Washington street, and that this authority was confirmed in 1834 by the legislature.   There were two tracks of the railroad in Washington street, for which 16 feet were taken out of the centre of the street.   In 1861, the pole spoken of in the declaration was put as a flag-staff by the hands in the rolling-mill of Hooven & Sons.   It was erected 23½ feet from the south-west line of Washington street, and was in the cartway 8½ feet from the curbstone.

On the 8th of April 1868, the plaintiff, being in the employ of a lumber firm, was engaged in taking lumber from a freight-car on the railroad track in Washington street, and loading it into a cart also on the track, when the pole fell upon him and seriously injured him.

[Norristown v. Moyer.]

The case was tried May 25th 1870, before Ross, J.

The plaintiff gave evidence of the facts connected with the injury and its extent. He also gave in evidence an authorized map of Norristown, the act incorporating the borough and its supplements, and various ordinances relating to the streets and ways in the borough. These are referred to in the charge of Judge Ross; also evidence to show that the pole was rotten.

The plaintiff having rested, the defendants called J. Crozier, who testified as to the erection of the pole. The defendants asked witness, "Within your recollection, has there been any hauling of wagons and carts over that part of the street where the pole stood?"

The plaintiff objected to the question, it was overruled by the court, and a bill of exceptions sealed.

Defendants offered to prove that the travelled part of Washington street is, and has been for the last twenty years at this point, not over the ground where the pole is erected, but some distance from it.

Also, that the spot where the plaintiff was injured was upon that part of Washington street upon which the Philadelphia and Germantown Company have located their road; have graded it, and put in a switch, and at that time were in use of the switch, and that the railroad company kept that part of the street, viz., the spot where plaintiff was injured, in repair, and that the plaintiff was here engaged in labor connected with the railroad.

Also, that that part of Washington street where the pole was erected had not been used and travelled by the public as a street or thoroughfare since the adoption of the said street by the Philadelphia, Germantown and Norristown Railroad Company, nor since the building of that railroad, nor have the borough authorities ever assumed any control over it since.

These offers were objected to by plaintiff, rejected by the court and several bills of exception sealed.

The defendants then gave evidence that the pole was 16 feet 1 inch from the centre of the railroad, and 11 feet 4 inches from the curbstone of the south-west side of Washington street.

There was evidence by the plaintiff on the question of damages, and by the defendants for the purpose of showing negligence on the part of the plaintiff.

The defendants submitted a number of points, which with their answers follow the charge of the court.

The court charged:—

"This is a special action on the case, instituted by the plaintiff, to recover from the defendants, who are a municipal corporation, damages for an injury sustained by him on the 8th day of April 1868, in Washington street in this borough. It seems that about noon of that day the plaintiff, who was the employee of a lumber

firm, was engaged in taking lumber from a freight car of the Philadelphia, Germantown and Norristown Railroad, and loading it upon a cart on the line of the company's track in Washington street, when a large liberty-pole, erected during the late civil war, and which the plaintiff alleges was standing in the street, fell upon his shoulder, permanently crippling and paralyzing, as he avers, his right arm. It is for this injury, thus sustained, that he has brought this action, and seeks to make the municipality liable in damages. To maintain this issue, the plaintiff must establish to your satisfaction, by the weight of the testimony, a series of facts. These in their natural order are as follows :—

" 1. That the pole fell upon him and inflicted the injury complained of.

" 2. That the pole was standing within the corporate limits in a public street, opened for public use by proper authority.

" 3. Whether the plaintiff, at the time of its fall, was lawfully on the street for a lawful purpose, and executing that purpose lawfully.

" 4. Whether the plaintiff was guilty of negligence which contributed in a degree, however slight, to the infliction of the injury.

" 5. That the pole was, prior to and at the time of its fall, in a rotten, unsafe and dangerous condition.

" These five inquiries are, as it were, so many steps on the road, before you reach that point at which the plaintiff is entitled to your verdict. Each and all involve matters of fact, which, subject to the instructions of the court as to the law arising upon these facts, are entirely for your determination. First, then, you will inquire, Whether the plaintiff was injured by the fall of the pole ? It is not denied by the defendants that he was, nor could such a denial successfully be made; and it is conceded that the pole did fall upon him and inflict the injury under which he is now laboring. But this is a question of fact entirely for you. If you should determine that the plaintiff was thus injured, you have advanced one step on the way which leads to a verdict in his favor.

" Your next inquiry will then be, Whether the pole was within the limits of a public street, opened for public use, within the corporate limits of Norristown ? If you should find it was not, you need inquire no further ; for if it was not within limits in which the municipality are vested with municipal authority, there being no power there would be no duty, and where there is no duty there can be no liability for default. The evidence upon which the plaintiff relies to establish that it was, is first, an authorized map of the borough, made by authority of the charter, in which this street is designated ; and second, certain ordinances of the town council, made from time to time in reference to it, the first of which seems to have been enacted as far back as 1835. These ordinances are briefly as follows :—Ordinance of July 13th 1835,

[Norristown *v.* Moyer.]

directing footwalks on each side of Washington street to be graded. Ordinance of July 27th 1836, requiring by section 4 that these sidewalks be paved; supplement to that ordinance (without date), extending the order for paving. Ordinance of June 2d 1838, defining the width of Washington street and the sidewalks. Ordinance of August 7th 1848, providing for the paving of a part of Washington street. Ordinance of September 19th 1850, directs the regulators to cause the height, situation and range of the curb along the south side of Washington street, between certain points, to be adjusted. Ordinance of April 23d 1853 directs the same authority to perform the same duty upon another section of the same street. Ordinance of September 26th 1853 requires the same duty to be performed for still another section of the same street. Ordinance of August 12th 1839 regulates the use of the street by the railroad company, and in Ordinances of June 17th 1844, May 9th 1846, September 27th 1847, August 7th 1848, June 12th 1854, Washington street is frequently designated as one of the public and opened streets of the borough, and municipal authority in and over it claimed and exercised. The width of the street and its boundaries are established; and if you believe the testimony it would seem, although this is entirely for you, that the plaintiff has established that Washington is a public street, laid out and opened for public use in the borough of Norristown, and controlled by the municipality; and that this pole, at the time of the accident and for a long time before, was standing within its limits. If you should determine these facts with the plaintiff, you have made a second step towards that point at which he can demand your verdict.

"Your next inquiry, in that event, will be:—Whether the plaintiff, at the time of the occurrence, was in the street for a lawful purpose, executing that purpose lawfully, in contravention of no law or municipal ordinance? These, although questions of fact, are allied with certain well defined legal principles, an intelligent comprehension of which is necessary to a proper finding. The public possess, in a public highway, the right of transit and of transit only. The use, by every citizen of public ways, must be a use appropriate to the purposes for which they are intended, that is of transit; with such stoppages as business necessity, accident, or the ordinary exigencies of travel, either in vehicles or on foot, may require. I will illustrate:—if one of you, for the purposes of a social visit, place your carriage before a door, where it remained in the way while you enjoyed your social intercourse within, this not being such a stoppage as is required by the necessities of business, accident or the exigencies of travel, such occupation of the highway by the carriage would be an obstruction of it, that is, would constitute a nuisance. If, however, you drove to a store, and left your wagon in the highway before it, for the

time necessary to unload the freight you had hauled for the store, or to load the purchases you had there made, such occupation of the public highway, growing out of the business necessities of the occasion, and continued only so long as was reasonably necessary, would be lawful. It is upon this general principle that the infamous habit of corner lounging, when not prohibited by special local legislation, is illegal. The loungers who occupy the public highway are, while lounging, not using it for the purposes of passage, and are therefore obstructions of the public right of way—that is, nuisances. Those are the general principles of the law. You will apply them to the facts; [was the plaintiff on the street for a lawful purpose? If you believe the testimony he was there, by virtue of his employment, to unload lumber from a car. Did he execute that purpose lawfully? Did he consume an unnecessary length of time in the work? These are questions for you to answer—then, if you answer them for the plaintiff, if there be no ordinance of the town council, which *per se* rendered his acts illegal, he was lawfully on the street, for a lawful purpose, and was executing that purpose lawfully]. Do the borough ordinances modify these general rights of user by the public in the streets of this borough or specially in Washington street? If there be ordinances regulating and controlling the general right of user, they supersede, under the charter of the defendants, these general principles and constitute the law governing the facts in this case: —for, by § 5 of Act of 1853, Pamph. L. 228; § 4 Act of 1834, Pamph. L. 86; § 6 Act of 1812, Pamp. L. 255, the burgess and town council are vested with power to make ordinances for the government, regulation, use, &c., of the public streets, lanes and alleys within the corporate limits. The Ordinance, August 12th 1839, by § 1, regulates the use of Washington street by the railroad company (who was empowered, by legislation, to occupy that street with their track); and by § 2 provides, that it shall not be lawful for any person, in that street, "to load or unload any railroad car or carriage on the railroad in Washington street, at any place between Green alley and Cherry alley, &c." This is a negative pregnant, a prohibition in a specially named section of the street, of the power to load or unload, would necessarily imply, that the act was licensed, and would be recognised as lawful in other sections of the same street, *mentio unius exclusio alterius.* The plaintiff was unloading, not between the points designated, but in another part of the street, to which the prohibition did not extend. It is apparent, therefore, that he was not in contravention of an ordinance, and it would be no strained construction to say he was in the exercise of a right, which by implication, was licensed by the ordinance. But, be this as it may, your inquiry is left unembarrassed by any ordinance, and is to be decided by the general rules unmodified in this case by any municipal regula-

[Norristown v. Moyer.]

tion. You will say then, under these instructions, whether the plaintiff was on the street lawfully for a lawful purpose, and was executing that purpose lawfully at the time he was injured. If you should decide these inquiries with him, you have made a third step in his favor. If you should find against him, you need inquire no further, for the defendant would be entitled to your verdict. If you should find with the plaintiff, however, you will next inquire :—Whether he was guilty of negligence, that contributed in a degree, however slight, to the infliction of the injury ?

"To answer this question intelligently, you must thoroughly understand what is meant by negligence in law. What then is negligence? The answer to some extent must be by the court, for it is a mixed question of law and fact; but it is your province, gentlemen, to determine, under our instruction, whether it exists under the facts proven in the case. 'Negligence,' said Mr. Justice Williams, in McCully v. Clarke & Thaw, 4 Wright 402, 'is the want of proper care, caution and diligence—such care, caution and diligence as, under the circumstances, a man of reasonable and ordinary prudence would exercise. It consists in nonfeasance, that is, omitting to do, or not doing, something which ought to be done, which a reasonable and prudent man would do; and a misfeasance, that is, the doing of something which ought not to be done, something which a reasonable man would not do, or doing it in such a manner as a man of reasonable and ordinary prudence would not do it, in either case leading to mischief or injury.'

"There is another definition, more succinct but equally comprehensive, which is, 'that negligence is the absence of care according to the circumstances,' per Agnew, J., Turnpike v. Railroad, 4 P. F. Smith.

"I will illustrate those definitions. It would not be negligence to carry a bucket filled with water through a double row of torches, uncovered and unshielded from the flames and sparks; but it would be negligence to bear through the same torches an uncovered quantity of gunpowder or nitro-glycerine. It would be a misfeasance to carry the latter through such dangers, and it would be nonfeasance, if so carried, to neglect to protect them by enclosures impervious to the fire. Why is the one act negligent and the other not? Because the first substance is not inflammable or combustible, while the latter substances are so in a very high degree; and the difference in these circumstances varies the degree of care required in accordance with it, and determines the quality of the act. You will accept these definitions and illustrations, and be guided by them in determining the question of negligence on the part of the plaintiff. I charge you that if any negligence on his part, however slight, contributed to his injury or the cause which produced it, he cannot recover, no matter how

[Norristown *v.* Moyer.]

grossly the defendants may have neglected to perform their duty. You will turn to the evidence and determine the fact from it. If you find he was guilty of negligence, which in any degree contributed to the injury, you need inquire no further. If you find he was guilty of no contributory negligence, you have taken a fourth step towards a verdict in his favor, and your remaining inquiry will then be, Whether the pole, prior to and at the time of its fall, was in an unsafe, rotten and dangerous condition?

"This is purely a question of fact, to be determined by the testimony in the case, to which you will turn for your guiding light upon this inquiry. If you should determine that it was, then you have taken the fifth and last step, and the plaintiff will be entitled to your verdict, for I charge you, that if you should find the several questions presented in favor of the plaintiff, and that this pole was, prior to and at the time of its fall, unsafe and in a rotten and dangerous condition, that it was the duty of the defendants to remove it. This municipal corporation is bound by its charter to keep its streets in repair. Section 5, Act of 1853, which is but a repetition of previous statutes to the same purport, enjoins and provides in these terms: 'That the town council of the said borough, when assembled for that purpose, shall have full power and authority to make and ordain such laws and ordinances as shall be necessary for lighting, watching, watering, pitching, paving, repairing and cleaning all the streets, roads, &c., and also for removing all nuisances thereon, and the same to put in force and execution by the proper officers, &c.'

"Under this charter the repair of streets, and the removal of nuisances therefrom, is a duty clearly enjoined by statute, and it is authoritatively ruled, that a corporation, which is bound by its charter to keep its streets in repair, and remove nuisances therefrom, is liable for an injury occasioned by its neglect to do so, and it is not material whether the neglect was wilful or not: Erie *v.* Schwingle, 10 Harris 385; Dean *v.* Township, 5 W. & S. 545; Pittsburg *v.* Grier, 10 Harris 54.

"If, then, this pole was in an unsafe, rotten and dangerous condition, it was a nuisance, and if it was within the corporate limits upon a municipal highway, one over which the municipality had authority by charter, it was their duty to remove it; upon failure to do so, they are liable for an injury occasioned by their neglect, whether that neglect was wilful or not.

"I will recapitulate the conditions upon which that liability arises:—

"1. The plaintiff must be injured by the consequences of the neglect.

"2. It must appear that the negligence was failure to remove a nuisance in a public highway, opened for public use, over which the defendants had municipal control.

[Norristown v. Moyer.]

" 3. The plaintiff, at the time of the injury, must have been on the public highway, in its lawful use, for a lawful purpose, lawfully executed.

" 4. The accident must have occurred and been inflicted without concurrent or contributory negligence on his part.

" 5. It must result from a public nuisance : and

" 6. The duty to repair and remove nuisances must be enjoined by the charter upon the municipal authorities.

" If, under the instructions as to the law, you find these conditions all exist, and that they are established by the weight of the testimony, the plaintiff is entitled to your verdict.

" It has been earnestly contended, that in order to render the municipality liable, the neglect must be shown to be wilful, and that before a recovery can be had on this issue, it must be established that the municipality had notice of the condition of the pole. I have already charged you that it is not material, where the charter enjoins a duty, whether the neglect to perform that duty was wilful or otherwise; and I now charge you positively, that it is not necessary to a recovery in this case that the plaintiff should show that the defendant had notice of the condition of the pole prior to its fall : Erie v. Schwingle, *supra*; Bartlett v. Crozier, 15 Johns. N. Y. Rep. 250. It is only necessary to establish that the neglect was wilful, where the suit is against a public officer as an individual; but where the liability of the corporation is involved, neglect of a duty, whether wilful or otherwise, is sufficient to maintain the action. The rule in criminal prosecutions would be different—but this is a civil action. This distinction is based upon sound reasons of public policy, and public safety, which could readily be vindicated if it were necessary to do so. But you, gentlemen, are to be governed by the law as it exists, and not to inquire as to its foundation or propriety.

" It has been also earnestly contended that there is no duty devolving upon the defendants in relation to this street, as it is under the exclusive management and control of the railroad company. If this were shown to be the fact, the position would be well taken; but the charter of the company vests no such exclusive authority, and the borough ordinances would seem to establish (although that is a matter entirely for you) that the municipal authorities regulated and controlled this street from time to time. I charge you, however, gentlemen, that the charter of the railroad company merely confers an easement in Washington street upon the company, and that the existence of that easement does not relieve the municipality, in relation to Washington street, from the duty imposed upon them by the charter in § 5 of Act of 1853, and the other acts referred to in that connection.

" It is also insisted that if the pole was not erected on the travelled track of Washington street, and was no obstruction to the

[Norristown *v.* Moyer.]

public in passing and repassing upon that street, the defendants were not bound to remove it. But the charter imposes upon the defendants the duty of repairing the streets, and removing nuisances therefrom, and if this pole was in the limits of a public opened street, it was where the defendants had power, and were bound to perform duties. If, being within those limits, it was in an unsafe, rotten and dangerous condition, it was a nuisance, and it became their duty to exercise that power and remove it. It is immaterial, therefore, in this case, whether it impeded public rights, and was an obstruction to the actual travel or not, if you find it was rotten, unsafe and dangerous. Other legal obstacles to the recovery of the plaintiff have been urged, but as they will be answered by the court in reply to written points presented by the defendant's counsel, I shall not further notice them in detail, and I charge you, if your finding be with the plaintiff upon the several inquiries submitted, that he is entitled to your verdict.

"If you should reach this point, the only remaining consideration is the amount of damages to which he is entitled. It is conceded that he can recover nothing but compensatory damages; that is, a pecuniary payment for the actual injury sustained. You will therefore inquire as to the extent of that injury. You have seen him, and witnessed his present condition, and you have heard the medical and surgical evidence as to its character, extent and effects. From this you will determine its nature and gravity. You will carefully bear in mind that your verdict must be limited to simple compensation; that is, the payment in dollars and cents for the injury. How much his effective capacity is diminished, and what his pecuniary loss in consequence of that diminution. You will remember that he was not a tradesman, artist or clerk, but simply a laborer, and the rate of compensation must be based upon the character of his avocations, and the consequent loss arising from the quality of the injury. I do not mean to imply that the arm of a laborer is of less value to him, than the arm of an artist; but the remuneration derived from their respective labors is upon a totally different scale, and as that scale determines the amount of the loss, it must be considered in rendering a verdict for compensatory damages. Among the injuries sustained for which pecuniary compensation can be given, you may take into consideration the physical pain suffered by the plaintiff; but you must estimate this reasonably and moderately, and not be led away by sympathy or speculative ideas of suffering. Pain is but a temporary evil, and you must avoid an extravagant allowance for it. I regret that it is an element of consideration that can enter into your verdict—for, being a matter of feeling, there is no standard of estimate—but it is my duty to say, you have a right to consider it in assessing the damages: Railroad Co. *v.* Allen, 3 P. F. Smith 278–9. But in this case I do not think, though it

[Norristown *v.* Moyer.]

is for you, that the verdict for the plaintiff should be greatly increased upon this ground. You can also take into consideration the expenses for nursing and medical attendance, and you will make no deduction because the plaintiff was aided by charity; individual benevolence cannot be made a set-off by the municipality.

"In assessing these damages you will throw out of view all feeling of sympathy, compassion and charity, for these elements, if allowed to influence your assessment, will lead you widely astray; neither are you to adopt a different scale of valuation in this case, because the defendants are a corporation, from that which would govern were they private individuals. The measure of damages does not change with the corporate character of the defendants. You will then make up your verdict, based upon the principle of compensation; that is, a sum that will make him pecuniarily whole. You will allow nothing for his poverty, for this would be robbery; nothing for charity, for no charity can be honest which draws its bounty illegally from the pockets of another; but you will decide what amount of damages are the pecuniary compensation for the injury sustained. To this he is entitled, and to not one cent beyond it."

The points submitted by the defendants, with their answers, were:

1. "If the jury find that the plaintiff was engaged in unloading cars standing upon the track of the Philadelphia, Germantown and Norristown Railroad Company, laid along Washington street, and was not a traveller or passenger upon the said street at the time he was injured, the defendants are not liable, and the plaintiff cannot recover in the suit."

Answer: "We decline to affirm this point, but instruct the jury if the plaintiff was not at the time the accident happened, engaged in a lawful use of the street, such as has been described and defined in the general charge, he cannot recover."

2. "If the jury find that the pole, the falling of which caused the injury to the plaintiff, was not erected by the defendants or by any of their authorized agents, the plaintiff cannot recover."

Answer: "We decline to affirm this point, but instruct the jury that if they should find the pole was erected within the limits of Washington street, and that Washington street was a public street of the borough of Norristown, laid out for public use, and that the pole thus erected there had become rotten, unsafe and dangerous, it was a nuisance; that it was the duty of the defendants to remove it, and if the failure to perform that duty resulted in an injury to the plaintiff, without contributory negligence on his part, the defendants are liable in this action."

3. "If the jury find that the defendants were not notified of the existence of the pole, and were not notified or requested to remove the same, the defendants are not liable and the plaintiff cannot recover."

[Norristown *v.* Moyer.]

Answer: "We decline to affirm this point, but instruct the jury that if they find the injury of the plaintiff was caused by such a nuisance existing in the street, as described in the answer to the 2d point, the defendants would be responsible in damages for neglect in not removing it, whether notified or not, if there was no contributory negligence on the part of the plaintiff."

6. "If the jury find that the pole, the falling of which caused the injury, was no obstruction to the public in passing and repassing upon Washington street, at the point where it was erected, the defendants were not bound to remove it, and they are not guilty of negligence in not having done so, and without notice of its dangerous condition they are not liable, and the plaintiff cannot recover."

Answer: "We decline to affirm this point, but we instruct the jury that if they find the pole was on the public street, and in the condition designated in the answer to the 2d point, it is of no moment whether the street was actually obstructed, or whether the defendants had notice or not."

7. "The Philadelphia, Germantown and Norristown Railroad Company have no legal right to load or unload their cars upon Washington street, and if the plaintiff was thus engaged in so doing, he was guilty of concurrent negligence and cannot recover."

Answer: "We decline to affirm this point."

The verdict was for the plaintiff for $2475.

The defendants took out a writ of error. They assigned for error the rejection of their offers of evidence, the part of the charge in brackets, and the court's refusal of their points.

*G. W. Rogers* (with whom was *J. L. Allabaugh*), for plaintiffs in error.—The obstruction of the road by plaintiff with his cart was a nuisance and negligence by plaintiff: Stinson *v.* Gardiner, 42 Maine 248; Hounsell *v.* Smith, 7 C. B. N. S. 731; Gillis *v.* Penna. Railroad, 9 P. F. Smith 129. The pole was not erected by the defendants or their agents, and therefore they were not liable: Thayer *v.* Bastin, 19 Pick. 471; West Chester *v.* Apple, 11 Casey 284. They would be answerable only to the traveller if the passage were obstructed: Havard *v.* N. Bridgewater, 16 Pick. 189. If the defendants were bound to know the dangerous character of the pole, so was the plaintiff, and he ran the risk at his peril: Farnem *v.* Concord, 2 N. Hamp. R. 292; Whitehead *v.* Philadelphia, 2 Philad. R. 99; Detroit *v.* Blakeley, (Michigan) 9; A. L. Reg. N. S., Nos. 11, 670. They cited also 2 Redfield on Railways 373; 1 Id. 252.

*C. Hunsicker* and *B. M. Boyer*, for defendant in error.—A municipal corporation must keep the streets in repair, and are liable for neglect, whether wilful or otherwise: Erie *v.* Schwingle,

[Norristown v. Moyer.]

10 Harris 384; Winpenny v. Philadelphia, 15 P. F. Smith 135; Lancaster Turnpike v. Rogers, 2 Barr 114; Dean v. New Milford, 5 W. & S. 545; Pittsburg v. Grier, 10 Harris 55.

The opinion was delivered, February 9th 1871.

PER CURIAM.—The offers of testimony by the defendants below to prove that that part of Washington street where the plaintiff was injured by the falling of the pole was not generally travelled, and that the spot on which he was at the time of the injury was a part of the street upon which the Philadelphia and Germantown Railroad Company had located their road and switches, and that the plaintiff was engaged at the time in labor connected with the railroad, was properly rejected. It was not pretended that the street had not been opened and graded by the town authorities and under their jurisdiction; and because a portion of it had been awarded as an easement to the railroad, the authorities themselves were not relieved from the duty of seeing that *man-traps* or dangerous erections were not kept upon it, and they were bound to remove them. The doctrine applicable to this part of the case may be found fully discussed in Erie City v. Schwingle, 10 Harris 384.

The general charge of the learned judge was so lucid in its presentation of the law and facts to the jury in the case, that it needs no discussion, nor do the answers to the points objected to; the charge vindicates them all, and we affirm this case upon the charge; with a single qualification of a matter introduced by way of illustration, viz.: that the carriage of a visitor to the house of a friend left standing on the street is a nuisance. It may become, but is not a nuisance *per se*, and this we presume is what the learned judge meant, but his language might be misconstrued.

Judgment affirmed.