**FREUND et al. v. JOHNSON.**

No. 4370.

Circuit Court of Appeals, Seventh Circuit.

Jan. 15, 1931.

Rehearing Denied Feb. 19, 1931.

Vincent G. Gallagher, Meyer Abrams, Bernard Shulman, and Max Shulman, all of Chicago, Ill., for appellants.

Francis J. Houlihan and Frank Michels, both of Chicago, Ill., for appellee.

Before ALSCHULER, SPARKS, and PAGE, Circuit Judges.

ALSCHULER, Circuit Judge.

The appeal involves a decree finding title of certain real estate in Chicago to be in appellee, as trustee in the bankruptcy of appellant Peter B. Freund. Involuntary petition was filed February 4, 1925, against Freund and his son, and was followed by their voluntary petition. Bankruptcy was adjudicated March 30, 1925, and on December 7, 1925, the bankrupts were discharged. Claims of about $6,000 were allowed, and up to September, 1926, when the estate was closed, practically no assets were disclosed.

Upon petition filed June 6, 1928, alleging that Peter had an unincumbered half interest in the real estate, which had not been scheduled in the bankruptcy, but was fraudulently concealed from the trustee, the estate was reopened, the trustee reappointed, and bill filed in the District Court to set aside a deed of conveyance of the property by Peter, and one by his grantee to his sister, appellant Gertrude Davis, and certain incumbrances placed thereon by Davis, and to have the title decreed to be in the trustee. The District Court found for trustee.

Peter and his wife, Ada, took title to the property as tenants in common in 1920, and have since continuously resided thereon. By a deed dated November 1, and recorded November 21, 1923, Peter and Ada conveyed the property to Ada's sister, Jane Woodcock, in whom the record title rested until January 21, 1926, when there were recorded two deeds, each dated October 7, 1925, one conveying to Perkins (a daughter of Ada) an undivided half of the property and the other to Davis (sister of Freund) an undivided half.

If, by the transaction of November 1, 1923, Woodcock acquired for her use Peter's interest, it could not be reached in this proceeding, since that conveyance does not appear to have been made in fraud of any of the creditors involved in the bankruptcy. All the claims here involved arose in the conduct of a business by Peter and his son which was not started until considerable time after the deed to Woodcock. If, on the other hand, the conveyance of Peter's interest to Woodcock was purely colorable, and she held the title solely for Peter, and subject to his direction, and this situation continued until after the bankruptcy began, the trustee is entitled to prevail.

As primarily indicating that the title never actually left the Freunds, there is in evidence an unrecorded deed duly executed by Woodcock, and bearing the same date as the deed to her, conveying the property to the Freunds. Peter denied all knowledge of the deed, saying he never saw it until it was produced in court in a partition controversy between his wife and Davis and in a divorce proceeding between him and his wife, wherein his wife undertook to establish that Peter was all the time the real owner of the undivided half.

The master to whom this cause was referred impliedly found that this deed was not made at the same time of the deed to Woodcock, but long thereafter, to serve Ada's purposes in her litigation. The decree found that Woodcock's deed to Peter and Ada was concurrent with that to Woodcock.

Woodcock, Ada, and the lawyer who drew both deeds testified that the deed from Woodcock was made at the same time as the deed to her. Appellants maintain that Ada was incompetent to testify against her husband's interests. It is answered that Peter was not a necessary party in that the title of the property was in Davis, and whatever interest Peter really had had passed to the trustee, and that Ada was competent to testify. While this contention is plausible, in our view of the case Ada's competency need not be determined. The lawyer's testimony is also claimed to be incompetent as privileged. We cannot see that what he testified concerning the deed grew out of his relation as attorney for Peter. In drafting the deeds he acted not as an attorney but as a scrivener, in which capacity he may testify to what was done, even if in other respects he was acting as attorney for Peter, which is extremely doubtful. Champion v. McCarthy, 228 Ill. 87, 81 N. E. 808, 11 L. R. A. (N. S.) 1052, 10 Ann. Cas. 517.

The evidence leaves us very dubious as to the time of execution of this deed; but, wholly disregarding the deed, it is abundantly apparent (and indeed there is no evidence to the contrary) that by the deed to Woodcock it was never intended that Peter convey, or that Woodcock receive, any actual interest in the property; but that, as between them, the property was considered to be, and remained, Peter's to the same extent as if the deed to Woodcock had not been made. He continued to occupy and have the benefit of it in same way as before, to exercise the same dominion over it, free from the slightest interference of Woodcock; and, in manifestation of his ownership and control, when he requested Woodcock to convey it to Mrs. Davis, she promptly complied.[1]

But both appellants contend that Davis's rights date from May, 1924—nine months before the bankruptcy proceedings—at which time, she says, Peter arranged with her hus-

---

[1] The master's report well states the situation thus:

"The immediate reason for placing the title in Jane Woodcock is immaterial as all agree that the transfer was without consideration and not intended as an absolute conveyance. It was intended rather that Jane Woodcock merely take the title in trust for Peter Freund and Ada Freund to hold subject to their directions for its disposal. No directions had been given her at the time of the filing of the petition in bankruptcy in February, 1925, and at that time she still held the property in trust free and clear of incumbrance, Peter B. Freund and Ada Freund in reality being each the owner of an undivided half interest therein."

band and her to turn over his interest in the property in consideration of the surrender of $7,000 of notes which Peter had given to her husband, or to pay the notes. Peter testified to a similar state of facts, detailing how, beginning in 1921 and ending in March, 1923, his brother-in-law, Davis, had loaned him on several occasions an aggregate of $7,000, for which judgment notes were given. He said that in May, 1924, he gave the Davises an assignment or direction for the transfer of the title to him or to her in consideration of the notes, and that shortly after she got the deed from Woodcock Mrs. Davis gave him the notes (Mr. Davis having died).

To this alleged transaction neither the master nor the court gave credit, both disbelieving it; and we cannot say that the conclusion was unjustified. Neither the notes nor the alleged assignment were produced, but Peter gave some unsatisfactory testimony to the effect that his wife had robbed him of his papers.

■ But if this transaction occurred as stated, it amounted only to an alternative proposition by Peter to exchange his property for the notes or to pay the notes. It was without consideration and not binding, and was not carried out till after the bankruptcy intervened, and when Mrs. Davis admittedly knew that the property of which she received the deed was Peter's, and not Woodcock's, and that, as Peter's property, the trustee in his bankruptcy was entitled to have it.[2]

That it was Peter's plan to keep his interest in the property concealed, and to further complicate it, so that, in any event, it would seem too small to be worth the effort of creditors to reach it, is persuasively suggested by the fact that on the same day of the transfer to Davis, and evidently as part of the same plan, Davis executed a trust deed running to the Chicago Title & Trust Company to secure

[2] The master in his report stated it thus:
"Conceding for the sake of argument that Freund was indebted to Davis in the amount stated, the paper signed in May, 1924, was not an actual conveyance nor even an assignment as urged by counsel for Gertrude Davis. On Freund's testimony it was merely a promise to turn over in order to pay the notes and interest, Gertrude Davis stating her understanding of the agreement to be that Freund was to pay the notes or convey the property. No consideration passed and the notes were not claimed to have been surrendered to Freund at this time. The alleged consideration of the return of the notes was not made until the execution of the deed to Gertrude Davis on October 7, 1925, and she does not claim to have asked for any rent for the premises until after she received the deed. The deed purporting to convey to her Peter Freund's interest in the property was executed eight months after the filing of the petition in bankruptcy and after the trustee had by law become vested with Freund's interest in the property."

a principal note of $9,500, and ten interest notes, all payable to her own order, conveying the property to the trustee. These notes were never negotiated, but remained in possession of Davis and were introduced in evidence. The deed to Davis and this trust deed were filed for record on the same day and moment. The trust deed recites that it is given to secure part purchase money, a recital palpably false, and tends to indicate that at that time the theory of the surrender of the $7,000 of notes as the consideration for the Davis deed had not yet been evolved.

On June 12, 1926, Davis made another trust deed (recorded July 1, 1926) of the property to secure payment of her note for $5,000, payable to her own order, which likewise was never negotiated.

■ Appellants complain of the assessment against them of a portion of the costs —insisting that in any event the costs should be payable out of the estate. Assessment of costs is generally within the discretion of the court. Being of the view that the decree properly found the property in question to have belonged to Peter at the time of the bankruptcy proceedings, and that Peter and Mrs. Davis combined to prevent its coming into the hands of the trustee, we cannot say that assessment of the costs against them was an improper exercise of the court's discretion.

■ It is complained also that the decree fails to provide that any surplus above what is required to pay the claims allowed and to be allowed, and costs of administration, should be directed to be paid to appellant Davis. While, as between appellants and the trustee, the property in question is to be considered as Peter's property, which by bankruptcy passed to the trustee, yet this proceeding is not one to adjust the rights and equities as between these appellants. If Peter is willing that Davis should have so much, if any, of the property as is not required to pay the claims and administration costs, or if Peter has placed his title in a situation where he himself could not recover it back from Davis because of a fraudulent conveyance, it is not for the court in this action to adjudicate these matters as between them.

With the bill alleging the real estate to be worth $30,000, and with Mrs. Freund testifying that she had offered Mrs. Davis $12,000 for half of it, which was declined, and with the proved claims less than $6,000, there is, even in bankruptcy, a possibility of a surplus remaining after payment of claims and administration costs and expenses. We think

the decree should provide that, in case there is any such surplus, it shall be paid over to appellant Davis; and such modification is accordingly directed to be made.

We do not deem it necessary to consider other questions raised.

The decree as thus modified is affirmed. Of the costs of this appeal, appellants shall pay two-thirds and appellee one-third.