## OVERLAND CONST. CO. v. SYDNOR.
### No. 6437.

Circuit Court of Appeals, Sixth Circuit.
April 9, 1934.

Robert A. Black, of Cincinnati, Ohio, for appellant.

Robert H. French, of Cincinnati, Ohio (Benjamin P. Pink, of Cincinnati, Ohio, on the brief), for appellee.

Before HICKS and SIMONS, Circuit Judges, and HAHN, District Judge.

HAHN, District Judge.

Appellee's employer, Starrett Brothers, Inc., on the 18th day of July, 1930, was engaged as the general contractor in the construction of a 46-story modern office building known as Carew Tower, in Cincinnati, Ohio. Upon that date appellant, the Overland Construction Company, as subcontractor, was doing work upon said building with a crew of iron workers. It appears from the evidence that the iron workers wore a distinctive type of brown overalls with the initials "O. L." upon the back thereof, and that they wore 3½-inch belts in which to carry appliances for performing their work. Appellee, who was engaged in picking up bricks and doing other general work on the fortieth floor of the building, claimed to have been struck by a plank which had been dropped from the forty-first floor by one of the iron workers; the plank having markings indicating that it was used by them in their work. The principal injuries claimed by appellee were fractures of the fourth and fifth lumbar vertebræ.

Two of appellee's fellow workmen testified that after he had been struck and just as he had been placed in a lift for the purpose of taking him to the ground, an iron worker, unidentified as to name, came from the forty-first floor; that he immediately engaged in conversation with one of the workmen there present. One of the workmen testified that he said: "Well, the plank got loose from me and hit him a hell of a lick. I am sorry it got loose, but I couldn't help it." Another workman testified that he said: "Well, it hit him a hell of a lick. I let it go, but I am sorry for it." This testimony was objected to on behalf of the appellant and error assigned to the refusal of the court to exclude this testimony.

The courts and legal authors generally treat such declarations and exclamations as part of the res gestæ. 3 Jones, Commentaries on Evidence (2d Ed.) §§ 1196–1211. Morgan, "A Suggested Classification of Utter-

ances Admissible as Res Gestæ," 31 Yale Law Journal, 229, 238. Professor Wigmore limits utterances admissible under the res gestæ rule to three classes (3 Wigmore, § 1746, p. 737; § 1766, p. 773), and includes spontaneous declarations and exclamations within the exceptions to the hearsay rule. 3 Wigmore on Evidence, §§ 1745–1757. But whatever classification is adopted, the test for determination of the admissibility of such utterances remains the same.

In Wicker v. Scott, 29 F.(2d) 807, 809, this court said: "In determining what is or is not admissible as evidence under the res gestæ rule, the element of time is important, but not controlling. The controlling thing is that the act or declaration must be a spontaneous thing, springing out of the transaction itself before there has been time for reflection or premeditation."

Section 1747 of the Second Edition of Wigmore is as follows: "This general principle is based on the experience that, under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy (or, at least, as lacking the usual grounds of untrustworthiness), and thus as expressing the real tenor of the speaker's belief as to the facts just observed by him; and may therefore be received as testimony to those facts."

The declarations, we think, were admissible under the prior decisions of this court. In Armborst v. Cincinnati Traction Co. (C. C. A.) 25 F.(2d) 240, 241, plaintiff, a passenger on a street car, was injured while alighting therefrom. She was permitted to testify that while she was lying on the ground, a man picked her up and said, "You were throwed off that car." In Peirce v. Van Dusen (C. C. A. 6) 78 F. 693, 706, 69 L. R. A. 705 (opinion by Harlan, Circuit Justice), it was held permissible to show that defendant's superintendent, in answer to a question, said: "I am sorry. I was going to put this car on the elevator track. When I backed up, I did not see you. I did not know just where you was until I heard you holler." Other well-reasoned cases discussing the principles involved are Chesapeake & O. R. Co. v. Mears (C. C. A. 4) 64 F.(2d) 291; Perry v. Haritos, 100 Conn. 476, 124 A. 44; People v. Del Vermo, 192 N. Y. 470, 85 N. E. 690; Travelers' Ins. Co. v. Sheppard, 85 Ga. 751, 12 S. E. 18; State v. McLaughlin, 138 La. 958, 70 So. 925.

Nor were the declarations of the workman inadmissible because they were those of an agent or employee. It is true that the declarations of an agent or employee which are not part of the res gestæ are inadmissible, Vicksburg, etc., R. Co. v. O'Brien, 119 U. S. 99, 7 S. Ct. 172, 30 L. Ed. 299, but they are admissible if a part of the res gestæ, New Jersey Steam-Boat Co. v. Brockett, 121 U. S. 637, 649, 7 S. Ct. 1039, 30 L. Ed. 1049; 2 Wigmore (2d Ed.) § 1078; 3 Wigmore (2d Ed.) § 1769. On this point this case is ruled by Peirce v. Van Dusen (C. C. A. 6) 78 F. 693, 69 L. R. A. 705, supra. And see Denver Omnibus & Cab Co. v. Krebs (C. C. A. 8) 255 F. 543. The declarations sought to be admitted in Cyborowski v. Kinsman Transit Co. (C. C. A. 6) 179 F. 440, were not part of the res gestæ, nor were they spontaneous exclamations.

The declarations were admissible as against the contention that they were "but the expression of an opinion or conclusion as to who caused the accident." Neisner Bros. v. Schafer, 124 Ohio St. 311, 178 N. E. 269, 270; Cottom v. Klein, 123 Ohio St. 440, 175 N. E. 689. Rather the declarations related to facts and circumstances which the jury might properly consider in determining the ultimate issue of the negligence of the appellant. In American Mfg. Co. v. Bigelow (C. C. A. 2) 188 F. 34, 36 (5), the court held admissible a statement the effect of which was that defendant's superintendent had caused the injury to the plaintiff. See, also, Northern Pacific R. Co. v. Kempton (C. C. A. 9) 138 F. 992, 996; Kansas City Southern R. Co. v. Moles (C. C. A. 8) 121 F. 351, 352; and Annotation, 76 A. L. R. 1121.

If the jury believed the evidence, and particularly if it regarded the utterances of the workman testimonially, it is clear that it must have found that the workman declarant was a participant in the occurrence that caused the injury, and not a mere bystander.[1]

---

[1] Statements of a bystander seem, according to the weight of authority, to be admissible. Wigmore (2d Ed.) § 1755. See especially Standard Oil Co. v. John-

340

■ The court charged the jury that there was no evidence that the injuries to appellee's fourth and fifth lumbar vertebræ were permanent in their nature but otherwise left to the jury the question of the permanency of his injury. It is claimed that the court erred in leaving any question of the permanency of appellee's injuries to the jury. Upon examination of the evidence, we think there was no error in the charge as given. Further, it is clear that no prejudicial error intervened. The verdict was in the amount of $5,416.00 and the agreed and stipulated reasonable value of hospital and medical service was $4,379.17. The jury did not assess damages upon the basis of any permanent injuries.

■■ Appellant contends that appellee was not entitled to recover the reasonable value of hospital and medical services in the amount of $4,379.17 because this amount was paid for him by the Industrial Commission of the State of Ohio. Appellant does not contend against the rule that ordinarily a tort-feasor is not entitled to any reduction of damages because the injured party has received the benefit of insurance. Chicago, St. Louis & New Orleans R. Co. v. Pullman Southern Car Co., 139 U. S. 79, 11 S. Ct. 490, 35 L. Ed. 97; Missouri, K. & T. R. Co. v. Fuller (C. C. A. 8) 72 F. 467. The contention is that appellee was not entitled to recover because under Ohio General Code, §§ 1465-60 and 1465–69, appellant was required to make payments to the Industrial Commission of the State of Ohio, and that the amount of the hospital and medical expenses was paid by that Commission. We cannot agree with this contention. In Pappas v. Baltimore & Ohio R. Co. (C. C. A. 6) 37 F.(2d) 271, we recognized as stating the law Truscon Steel Co. v. Furnace Co., 120 Ohio St. 395, 166 N. E. 368. It was held in that case that an employer "cannot recover from any source any sum to reimburse an amount paid under the Workmen's Compensation Law to injured employees, whether the injury results from the negligence of some third party, or otherwise."

The latter case expressly overruled Ohio Public Service Co. v. Sharkey, 117 Ohio St. 586, 160 N. E. 687,[2] in so far as it held that where an injured employee had received the benefit of amounts paid by the Industrial Commission of Ohio, his recovery could be only "for such portion of the damage as has not been compensated for" by the Industrial Commission of the State of Ohio.

We think the principles underlying Pappas v. Baltimore & Ohio R. Co., supra, are sufficiently broad to include an employer who makes some contribution to the Commission, based upon the extent of his own employment, and which may redound incidentally or remotely to the benefit of an employee of another who sustains an injury through the contributor's negligence. That case must have recognized that such payments are not, in reality, paid by the employer but by the ultimate consumer as cost of production. In this case all of the amount so paid into the fund ultimately entered into the cost of the building.

■ It is also urged that the court below erred in sustaining a demurrer to a defense pleading facts claimed to be within the maxim, "Volenti non fit injuria." The substance of the defense was that because workmen in many trades were required to work upon the building at the same time, the hazard from falling objects was great, was well known to appellee who accepted employment and continued to work notwithstanding his knowledge of inherent dangers. We need not, we think, determine the legal sufficiency of the pleaded defense for the facts established by appellant's witnesses (though appellee's own testimony may seem to be to the contrary), show that at the time of appellee's injury a point had been reached in the construction of the building where the danger from falling objects had disappeared, or had reached the vanishing point, because of the construction and completion of concrete floors immediately above the floor upon which appellee was working at the time he sustained his injuries. If under the doctrine of Monongahela West Penn Public Service Co. v. Albey (C. C. A. 6) 31 F.(2d) 85, appellee

son (C. C. A. 1) 299 F. 93, 97; State v. Lasecki, 90 Ohio St. 10, 106 N. E. 660, L. R. A. 1915E, 202, Ann. Cas. 1916C, 1182; New York, C. & St. L. Railroad Co. v. Kovatch, 120 Ohio St. 533, 166 N. E. 682; Clason v. Velguth, 168 Wash. 242, 11 P.(2d) 249 (1932); State v. Breyer, 40 Idaho, 324, 232 P. 560 (1925); State v. Lewallen, 198 Iowa, 382, 199 N. W. 266 (1924); State v. Doro, 103 N. J. Law, 88, 134 A. 611 (1926); Wharton v. State,

117 Tex. Cr. 439, 38 S.W.(2d) 72 (1931); Weber v. State, 183 Wis. 85, 197 N. W. 193 (1924). Contra, Bradshaw v. Commonwealth, 10 Bush. (Ky.) 576. See also Annotation, 76 A. L. R. 1129, and Hutchins and Slesinger, "Spontaneous Exclamations," 28 Columbia Law Rev. 432, 434.

[2] See comment in this case, next to the last paragraph, page 593 of 117 Ohio St., 160 N. E. 689.

might have voluntarily assumed the risk of injury, even in the absence of a relationship of master and servant, yet it appears that the maxim relied on had no application to the facts as they were established by appellant's evidence. Monongahela West Penn Public Service Co. v. Albey, supra, page 89 of 31 F.(2d).

The judgment of the District Court is affirmed.