## NATIONAL LABOR RELATIONS BOARD v. BRASHEAR FREIGHT LINES, Inc.

### No. 477.

Circuit Court of Appeals, Eighth Circuit.

April 13, 1942.

Reeves R. Hilton, of Washington, D. C., Atty., National Labor Relations Board (Robert B. Watts, General Counsel, Ernest A. Gross, Asst. General Counsel, and Gerhard P. Van Arkel, all of Washington, D. C., Atty., National Labor Relations Board, on the brief), for petitioner.

Stephen C. Rogers, of St. Louis, Mo., for respondent.

Before STONE, GARDNER, and JOHNSEN, Circuit Judges.

GARDNER, Circuit Judge.

This proceeding is now before us on petition of the National Labor Relations Board seeking to have the Brashear Freight Lines, Inc., adjudged in contempt of court for failing and refusing to comply with an order of this court.

The Board, on the 30th of March, 1940, petitioned this court for enforcement of its order issued against the respondent company and its officers, and under date, April 17, 1941, this court entered its decree enforcing the order as modified in certain particulars not here material (National Labor Relations Board v. Brashear Freight Lines, Inc., 8 Cir., 119 F.2d 379), and on May 16, 1941, modified its decree of April 17, 1941. As modified, the order provided that the respondent make whole for any loss of pay which Francis Walton may have suffered by reason of his discharge, by paying to his personal representative, or such other person as may be entitled thereto under the governing laws of succession, a sum of money equal to that which Francis Walton normally would have earned as wages during the period from the date of his discharge to the date of his death, less his net earnings, if any, during said period. This court found that Francis Walton had been discharged because of union activities, and reinstatement had become impossible by reason of his death, which occurred September 5, 1940.

It is agreed that Walton was unemployed for 160 weeks, during which time he would normally have earned $22.19 a week, making his total loss of earnings $3,550.40. During this period his cash earnings from other employment were $56.90, but he and his family received groceries from the International Association of Machinists, District No. 9, and the receipt of these groceries furnishes the basis of the dispute here.

A rule to show cause why the respondent and its president should not be attached and punished for contempt for failing to pay the total earnings lost, less the sum of $56.90, was issued by this court. Respondent contends that the value of the groceries should be deducted as interim earnings. The Board, resisting this contention, asserts that these were pure benefits, gratuitously given to Walton, without any thought that they were tendered or received as pay or compensation for services.

At the very threshold of the controversy, respondent challenges the right to hold it in contempt of court for failure to make payment because there has been no authoritative finding of the amount due. We express no opinion on this question as we think it is not necessary to decision.

If the groceries were received as gifts or "benefits," flowing from Walton's association in his union, or without association, they could not be deducted by respondent. The order of this court is that earnings for services rendered are to be deducted. Earnings and wages are here not to be distinguished. Springfield Coal Mining Co. v. Industrial Commission, 291 Ill. 408, 126 N.E. 133, 134, 22 A.L.R. 859. It is clear that the order means that sums received as wages for services performed are to be deducted. Aside from the interpretation to be given the words used, our order could not, we think, be interpreted as intending to give the employer, found to be a wrongdoer, the benefit of gifts or other collateral benefits received by the former employee during his period of unemployment. It is enough that it is permitted to deduct what he earned as wages. The general rule that a tortfeasor is not entitled to reduction of damages because the injured one has had the benefit of insurance payment or other collateral benefits would seem to be analogous. Overland Construction Co. v. Sydnor, 6 Cir., 70 F.2d 338; Sprinkle v. Davis, 4 Cir., 111 F.2d 925, 128 A.L.R. 1101.

The widow of Walton, in conference with the attorneys for the respective parties, stated that Walton walked different picket lines, and that groceries were given them therefor. This, it is urged, indicates that the groceries were in payment for services. There is evidence that from time to time the Waltons left St. Louis to live with relatives for short periods of time, during which they received no gro-

ceries and Walton did no picket duty. This may explain the statement that when he did not walk they received no groceries, and the inference that the groceries were received as compensation for picketing becomes inconclusive. The receipt of groceries when Walton was picketing must, in the light of the affidavit of J. R. Manning, accepted by both parties as evidence on this hearing, be considered as a coincidence. This affidavit of Manning shows that he was assistant business representative of the International Association of Machinists, District No. 9; that among his duties was that of making allowance and distribution of union benefits to needy members and their families; that the union granted benefits to Francis Walton, consisting of groceries, such as damaged canned goods, foodstuffs and grocery supplies at irregular weekly intervals from November 1, 1937, to the date of his death in September, 1940; that shortly after Walton's discharge in July, 1937, the union placed a picket line at the Brashear Freight Lines, Inc., garage and plant and maintained it until approximately the 15th of January, 1939. Walton was actively engaged in picketing the Brashear Freight Lines over a long period of time and assisted in picketing other places. In addition, the affidavit recites that, "Mr. Walton was never employed or engaged by the union to perform picket duty and he never received any wages, either in the form of money or benefits, for such services. After Mr. Walton died in September, 1940, the union continued to furnish food supplies to Mrs. Walton and her family until she remarried and no longer required assistance."

■ This is the only direct evidence in the record bearing on the nature of the relationship between Walton and the Union, and under the circumstances must be given controlling effect.

■ It was agreed at the hearing before us that the groceries received by the Waltons were of a value of $800. We conclude that the respondent was not entitled to deduct this item as interim earnings.

■ The record does not show a contemptuous attitude by the respondent, nor does it disclose any purpose to obstruct the administration of justice. It has apparently acted in entire good faith. In these circumstances we are not disposed to impose any penalty. The just solution would seem to be to order respondent, within thirty days from notice of this decision, to pay the sum of $800, being the balance due after crediting the payment of $2,693.59 paid under stipulation without prejudice, with interest on the sum of $3,493.59 from the date of the modification of the order to the date of the payment of said sum of $2,693.59, and with interest on the sum of $800 from the date of said payment at six per cent.

■■ Petitioner also seeks to charge respondent with the costs of this proceeding. Except as otherwise provided by statute, the taxation of costs in favor of or against parties to a proceeding is within the discretion of the court. Freund v. Johnson, 7 Cir., 46 F.2d 272; Ladd v. Perry, 7 Cir., 40 F.2d 265; Boston Sand & Gravel Co. v. United States, 1 Cir., 19 F. 2d 744; T. L. James & Co. v. Galveston County, 5 Cir., 74 F.2d 313; Bankers Securities Corp. v. Ritz Carlton Restaurant & Hotel Co., 3 Cir., 99 F.2d 51. In actions at law, courts ordinarily have no control over the costs which follow the judgment as a matter of law. United States v. Bethlehem Steel Corp., D.C., 26 F.Supp. 259. This proceeding, however, is not an action at law. No statute prescribes the rule for taxation of costs and the cause does not appeal to the court as one justifying the taxation of costs against respondent.

Order will be entered in accordance with this opinion.