## NATIONAL LABOR RELATIONS BOARD v. MARSHALL FIELD & CO.

### No. 7942.

Circuit Court of Appeals, Seventh Circuit.

June 26, 1942.

Rehearing Denied July 15, 1942.

Ernest A. Gross, Associate General Counsel, and Gerhard P. Van Arkel, Asst. General Counsel, all of Washington, D. C., Robert Todd McKinlay, of Chicago, Ill., and Leo J. Halloran, of Washington, D. C., Attorneys, National Labor Relations Board, A. Norman Somers and Robert B. Watts, General Counsel, N.L.R.B., both of Washington, D. C., for petitioner.

Ralph E. Bowers, of Chicago, Ill., for respondent.

Before EVANS, KERNER, and MINTON, Circuit Judges.

MINTON, Circuit Judge.

On February 21, 1942 the National Labor Relations Board filed in this court its petition for enforcement of its order against respondent. Upon stipulation of the parties a consent decree enforcing the order with slight modification was entered thereon on February 26, 1942. Our decree expressly reserved jurisdiction to construe paragraph 2(b) of the Board's order, which ordered respondent to: "(b) Make whole said Anice Swift and Georgia Papas Kelly for any loss of pay which they may have suffered by reason of the respondent's discrimination against them by payment to them, respectively, of a sum of money equal to that which they normally would have earned as wages from June 8 and June 1, 1940, respectively, to the date of the offer of reinstatement, less their net earnings during said period:"

The respondent filed its answer to the Board's petition on March 28, 1942, and we now proceed to construe paragraph 2 (b) of the order.

The questions presented are:

1. Whether under this paragraph respondent was entitled to deduct from the amounts due Swift and Kelly a sum equal to the benefits received by them under the Illinois Unemployment Compensation Act[1] during the period set forth in the paragraph; and

2. If paragraph 2(b) is so construed as to preclude respondent from deducting such amounts, whether under the National Labor Relations Act the order to that extent is within the powers of the Board.

In its answer to the Board's petition, respondent alleged full compliance with the Board's order and the court's decree, including payment to Swift and Kelly of such sums as they would have earned during the period prescribed in the decree, less amounts received by them under the Illinois Unemployment Compensation Act during the same period. Whether respondent has fully complied with the order to the extent that the order was within the powers of the Board depends upon the answers to the questions hereinbefore set forth.

■ Only by distorting the English language could we say that unemployment benefits are "earnings." The word "earnings" denotes an "economic good to which a person becomes entitled for rendering economic service." Webster's New International Dictionary, 2d Ed., unabridged 1937. See also National Labor Relations Board v. Brashear Freight Lines, Inc., 8 Cir., 127 F.2d 198; Words and Phrases, Perm.Ed., Earnings, Volume 14, page 31. The employees concerned did not receive the unemployment benefits in return for srvices rendered, and the amounts so received did not constitute "earnings" within the meaning of the order. Consequently the order did not authorize their deduction.

To show that the order as we have construed it is beyond the powers of the Board, respondent has argued that the order does not effectuate the purposes of the Act; that it makes the reinstated employees more than whole, and that therefore it imposes a penalty upon respondent.

Section 10(c) of the Act, 29 U.S.C.A. Sec. 160(c), confers jurisdiction upon the Board, if it finds that the employer has engaged in unfair labor practices, to issue " * * * an order requiring such person to cease and desist from such unfair labor practice, and to take such affirmative action, including reinstatement of employees with or without back pay, as will effectuate the policies of this Act [chapter]. * * *"

■ Under this section, the Board possesses discretion to determine whether an order to pay lost wages will effectuate the purposes of the Act. The Board has ordered that the employees be made whole

[1] Smith-Hurd Annot.Ill.Stat. Ch. 48, Sections 217–250.

172

by payment to them of lost wages less net earnings, and we see no merit in the contention that the order fails to effectuate the purposes of the Act.

 The only substantial question in this case is whether the order penalizes the respondent. The Act is remedial, and the Board is without power to inflict a penalty upon an employer, even though it believes that such action would effectuate the purposes of the Act. Republic Steel Corp. v. National Labor Relations Board, 311 U.S. 7, 61 S.Ct. 77, 85 L.Ed. 6.

In ordering the respondent to pay the reinstated employees their lost wages less only net earnings, the Board has followed well-established rules of damages, long used in tort and contract actions.[2]

It is stated in Williston on Contracts (Rev.Ed.1937) section 1358, that: " * * * in an action by the employee against the employer for a wrongful discharge, a deduction of the net amount of what the employee earned, or what he might reasonably have earned in other employment of like nature, from what he would have received had there been no breach, furnishes the ordinary measure of damages."

In the Restatement of the Law of Torts, Sec. 924, Comment (c), it is said that: "The damages (for loss of earnings) are not reduced by the fact that the plaintiff has suffered no net financial loss as the result of the entire transaction, as where he receives insurance money or an amount equal to his lost wages from his employer or from a friend."

In the recent case of National Labor Relations Board v. Brashear Freight Lines, Inc., supra, it was held that the value of groceries contributed to an unlawfully discharged employee was not deductible from his back pay. The court said [127 F.2d 199]: "It is clear that the order means that sums received as wages for services performed are to be deducted. Aside from the interpretation to be given the words used, our order could not, we think, be interpreted as intending to give the employer, found to be a wrongdoer, the benefit of gifts or other collateral benefits received by the former employee during his period of unemployment. It is enough

that it is permitted to deduct what he earned as wages. The general rule that a tort feasor is not entitled to reduction of damages because the injured one has had the benefit of insurance payment or other collateral benefits would seem to be analogous. Overland Construction Co. v. Sydnor, 6 Cir., 70 F.2d 338; Sprinkle v. Davis, 4 Cir., 111 F.2d 925, 128 A.L.R. 1101."

 The mere fact that Swift and Kelly may possibly receive more money for the period of their unemployment than they would have received if employed does not of itself affect the question. In private contract or tort cases involving loss of employment, as we have shown, the amount of damages recoverable is not affected by collateral benefits paid to the injured person. Yet in these cases, the award is not of punitive damages, but of compensatory damages, the purpose of which is to make the injured party whole. The wrongdoer may not be benefited by collateral payments made to the person he has wronged.

The respondent argues, however, that the unemployment benefits are not collateral benefits, because they are paid from funds which respondent is taxed to maintain. The tax is assessed against employers and the amount of the tax is determined by the size of the employer's payroll and by the percentage of the payroll which the law requires the employer to pay. Benefits paid to discharged employees are charged to the employer's benefit wage account, and the amount of benefits so paid in 1942 determines in part the rate of tax for 1943. If the amount paid in 1942 is large enough in proportion to the employer's total payroll for 1942, the employer will be required to pay a higher percentage of its payroll as a tax in the following year.[3]

If we assume that the tax is not ultimately borne by employees or consumers, this argument supports the conclusion that respondent has some interest in the unemployment benefits paid to its discharged employees, but it fails to lead us to the conclusion that the Board has imposed a penalty upon respondent. Cf. Overland Const. Co. v. Sydnor, 6 Cir., 70 F.2d 338, 340.

---

[2] See Shea v. Rettie, 287 Mass. 454, 192 N.E. 44, 95 A.L.R. 571; Hayes v. Morris & Co., 98 Conn. 603, 119 A. 901; Cox v. City of Chicago, 83 Ill.App. 540, 542; Overland Const. Co. v. Sydnor, 6 Cir., 70 F.2d 338, 340; Norristown v. Moyer, 67 Pa. 355.

[3] Smith-Hurd Annot.Ill.Stat. Ch. 48, Sec. 234(c).

■ The benefits in question were paid by the State, not by respondent. How the State raised the funds is a matter between the State and its taxpayers. If the payment of the benefits increases respondent's tax rate, the increase is caused not by the order of the Board, but by the law of the State.

If the unemployment fund had been raised by general taxation, surely respondent could not contend successfully that the benefits were not collateral because their payment might increase its rate of tax. Or if the benefits had been paid by a private charitable organization to which respondent had contributed, surely respondent would not claim that it had such an interest in the payments that they should be credited to its account. We believe that the present facts do not differ materially from our hypothetical cases. Respondent is not the only employer who is taxed under the Illinois Act, nor are benefits to its discharged employees limited to the amounts paid by respondent.[4]

■ Whether the employees are entitled to retain, under the circumstances of this case, the sums they received from the Illinois Division of Placement and Unemployment Compensation because they were unemployed, when such employees were paid by respondent for the same period as though they were employed, is a question between the employees and the Division on which we express no opinion, except to say that the respondent was not entitled to claim the deduction as earnings of the collateral benefit in the form of unemployment insurance received by the employees.

■ We hold that the order of the Board did not allow the respondent to deduct the unemployment benefits paid to Swift and Kelly and that the order was within the powers of the Board.

We shall issue a supplemental decree enforcing the Board's order as we have construed it.

EVANS, Circuit Judge (dissenting).

There are several reasons why the amount received by the employee from unemployment insurance should be deducted.

(a) Paying the employee more than he would have received had he remained in respondent's employment tends to encourage labor disputes.

(b) An employee, discharged in violation of the Labor Act, should be reimbursed for the loss occasioned by his discharge. This loss is ordinarily the wages he would have earned had he not been discharged, less sums which he has earned since his discharge. What he has earned should include the amount paid him as unemployment insurance, because such sum is money earned by him while he was working, and paid by his employer into the fund while he was working, although the actual payment to him was deferred until his unemployment period arrived. The insurance grew out of his employment and was so connected with his employment wages, as to require its deduction in determining his wage loss due to his unlawful discharge.

(c) To so construe a statute that a discharged employee will receive more compensation when discharged than when employed seems incongruous and illogical. It is so contrary to sound public policy that we can ascribe to Congress no intent to accomplish such a purpose.

---

[4] Smith-Hurd Annot.Ill.Stat. Ch. 48, Sec. 247.