### ALABAMA CHEMICAL CO. v. INTERNATIONAL AGRICULTURAL CORPORATION.

Circuit Court of Appeals, Fifth Circuit.
November 19, 1929.

Rehearing Denied December 14, 1929.

No. 5661.

S. H. Dent and Fred S.. Ball, both of Montgomery, Ala. (Ball & Ball, of Montgomery, Ala., on the brief), for appellant.

Marion Smith, of Atlanta, Ga., B. P. Crum, of Montgomery, Ala. (Steiner, Crum & Weil, of Montgomery, Ala., and Little, Powell, Smith & Goldstein, of Atlanta, Ga., on the brief), for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge. By a contract dated January 21, 1922, appellee agreed to sell, and appellant agreed to buy, 24,000 tons of Florida land pebble phosphate rock, at a price of $4.75 per ton f. o. b. appellee's mines, based on its containing 68 per cent. bone phosphate of lime. The price was to be increased at a stated rate "for any official analysis in excess of 68% B. P. L." (bone phosphate of lime), and correspondingly reduced "if below 68%, down to and including 66% absolute minimum B. P. L. * * * Seller however not to charge for any excess B. P. L. above 70%." Deliveries were to be made, beginning July 1, 1922, in approximately equal quantities per month of 4,000 tons in 1922, 10,000 tons in 1923, and 10,000 tons in 1924. The contract further provided that a sample of rock should be taken by appellee from each car at time of shipment, that at the end of each month an average sample should be sent to two named chemists for analysis, one of whom should represent the seller and the other the buyer, and that settlements should be based on the mean result, unless the difference between them should exceed 1 per cent., in which event a third sample should be sent to a named referee chemist and the mean of the two nearest of the three results should be accepted by the contracting parties as final. The buyer had the right to have a representative at the mines for the purpose of taking samples, and if it exercised that right the samples taken by its representative were to be accepted as correct.

This suit was brought by appellee to recover the contract price on two shipments of rock, one of 833 tons and the other of 403 tons, made and received in September and October of 1923, respectively; and also to recover as damages the difference between the market price and the higher contract price on 13,810 tons remaining to be delivered which appellant gave notice that it would refuse to accept and pay for, and which in consequence of such notice appellee did not ship. The declaration pleaded the contract, alleged generally that appellee had complied with all its obligations thereunder, and in the ad damnum clause claimed a stated amount "together with interest thereon."

Appellant pleaded the general issue in short by consent, with leave, under the Alabama practice, "to give in evidence any defense it may have in all respects as if the same were specially pleaded, and the plaintiff to give in evidence any matters of reply in like manner."

Appellant received and accepted shipments of the monthly installments through September, 1923. After about half the shipments for October, 1923, had been received, appellant notified appellee that it would not pay a note given for the May, 1923, shipments, would not pay the contract price for the September and October shipments already received, because the phosphate rock contained in all those installments had less than the minimum 66 per cent. bone phosphate of lime called for by the contract. It further gave notice that it would not pay more than the market price for future shipments that contained less than the stipulated percentage of bone phosphate of lime. At that time the market price of phosphate rock was much less than the contract price. Appellee replied that the rock shipped complied with the requirements of the contract, cited reports of the chemists agreed upon to that effect, and demanded to know whether appellant would settle for future shipments in accordance with the findings of such chemists. Appellant, after considerable delay, answered merely that it intended to comply with its contract, and later that it had rejected the unused rock on hand, and held it subject to appellee's order.

Florida land pebble phosphate rock contains a valuable constituent of commercial fertilizer known as phosphoric acid. In the

natural state of the rock the phosphoric acid is not available as a plant food, but is made so available by treating the rock with sulphuric acid and thereby producing acid phosphate. The phosphoric acid contained in pebble phosphate is present chiefly in the form of tricalcium phosphate, commonly called bone phosphate of lime, though smaller percentages of that acid are also present in other combinations. It was shown by the undisputed evidence that in the phosphate industry these smaller combinations are universally considered the equivalent of bone phosphate of lime. This trade custom has prevailed over a long period of time, perhaps from the beginning of that industry, and was followed by the chemists selected by the parties to analyze the phosphate shipped under the contract in suit. The reports of those chemists show that all the samples examined by them contained more than the contract minimum of phosphoric acid, which they designated as bone phosphate of lime. Expert chemists, who testified for appellant, also examined samples taken from the rejected shipments, and they admitted that those samples contained more than the contract minimum of phosphoric acid, but stated that they contained less than 66 per cent. of bone phosphate of lime, the other combinations of phosphoric acid running as high as 6 or 7 per cent. They admitted further that the chemists named in the contract arrived at correct results taking it for granted that the right existed to make use of equivalents. It was also shown by the undisputed testimony that the substituted forms of phosphoric acid were as valuable as was bone phosphate of lime in the manufacture of acid phosphate. The samples of rock sent by appellee to the chemists were taken from the cars strictly according to the contract. Appellant did not avail itself of the privilege of having its representative take samples at the mines.

Appellee introduced in evidence the record and judgment in a suit it brought in the state court against appellant for a balance due on a note given in payment of shipments under this same contract made in November, 1922, from which it appears that appellant pleaded fraud of the chemists in analysis of those shipments. The judgment was in favor of appellee, and was affirmed by the Supreme Court of Alabama, which held that appellant was bound by the trade custom, and as it was not pleaded that the custom was departed from no fraud was alleged. 215 Ala. 381, 110 So. 614. Appellee also introduced in evidence a contract between appellant and the Coronet Phosphate Company, dated January 15, 1924, from which it appears that

appellant agreed to buy 24,000 tons of Florida land pebble phosphate rock, to be delivered in monthly installments, to contain a minimum of 70 per cent. of bone phosphate of lime. That contract was similar to the one in suit, in that it contained a like provision for analysis by chemists selected by the parties; the only material difference otherwise between the two contracts being that in the contract with the Coronet company the price agreed upon was $2.35 per ton as against $4.75 per ton in the contract sued on.

At the conclusion of the evidence each side moved for a directed verdict in its favor, and the trial court granted the motion of appellee.

Appellant contends that it was error to direct a verdict against it, because the contract was breached by appellee in (1) shipping phosphate rock which contained less than the agreed minimum of 66% of bone phosphate of lime; (2) in sending improper samples of rock to the chemists to be analyzed; and (3) in refusing to continue shipments after rejection by appellant of the installments shipped in September and October of 1923. Appellant also assigns as error rulings of the trial court which admitted in evidence, over its objection, the record in the state court above referred to which disclosed that appellee had recovered judgment against appellant for the contract price of phosphate rock shipped in November, 1922, and the contract by which appellant agreed in January, 1924, to purchase phosphate rock from the Coronet Phosphate Company.

The requirement of the contract that the phosphate rock to be shipped should contain a minimum of 66 per cent. bone phosphate of lime was complied with as to the shipments made including those rejected if appellant had the right to substitute for bone phosphate of lime phosphoric acid in other combinations of equal value in the production of acid phosphate. That the substitution of other forms of phosphoric acid of equal value as the form described in the contract as bone phosphate of lime was authorized by a well-known general custom of long standing in the phosphate industry was established by the undisputed testimony. That custom was incorporated in the contract by implication, Hostetter v. Park, 137 U. S. 30, 11 S. Ct. 1, 34 L. Ed. 568; and became binding upon appellant whether it knew of the custom or not, 2 Williston on Contracts, 1276. But it is argued that the trade custom of substituting equivalents for bone phosphate of lime was not binding on appellant, because the contract was unambiguous, and that custom was not pleaded by appellee. On

the principle that the intention of the parties to a contract should prevail, the language thereof is to be given effect according to its trade meaning, notwithstanding that in its ordinary meaning it is unambiguous. 2 Williston on Contracts, 1172; 5 Wigmore on Evidence, §§ 2463, 2464. Appellee did not plead the custom in its declaration, but after setting out the contract alleged generally performance on its part. Appellant pleaded only the general issue, and in support of its defense offered evidence which tended to show that without the use of equivalents the phosphate rock shipped by appellee contained less than the stipulated minimum percentage of bone phosphate of lime. Appellant's plea being in short by consent, appellee was entitled under the Alabama practice, as well as by the language of the plea itself, to offer evidence in reply to any defense given in evidence by appellant.

In this state of the pleadings, appellee was clearly entitled to prove the usage or custom on which it relies in reply to the evidence given by appellant's expert witnesses, and it becomes unnecessary to decide whether in the absence of appellant's pleading in short by consent appellee would have been required to plead usage or custom in its declaration.

The samples of rock which were sent to the chemists for analysis were taken from the cars strictly in accordance with the requirements of the contract. Appellant did not choose to avail itself of the privilege of having the samples taken at the mines by its own representative accepted as correct samples by the chemists, but it did send samples from the rejected shipments taken in the manner which it approved to its own experts who confirmed the analyses made by the chemists agreed to by it from the samples sent from the mines. Nor did appellant ever complain of, or object to, the method of taking samples at the mines while the contract was being performed or before suit; but it rejected the shipments which it had received and gave notice that it would reject future shipments on the sole ground that the samples showed the phosphate rock contained less than the minimum bone phosphate of lime provided for in the contract. Appellant could not repudiate its contract on one ground, and then after suit seek to bolster up its case on another and different ground. Railway Co. v. McCarthy, 96 U. S. 259, 24 L. Ed. 693.

Appellee was not bound to continue shipments after receiving notice that future shipments complying with the contract as to quality of rock would be rejected by appellant.

It appears from the record in the suit filed in the state court, as well as from the opinion of the Supreme Court of Alabama, that the parties to this case had litigated to a finality, before a court of competent jurisdiction, the question whether the chemists who analyzed the samples of phosphate rock were guilty of any fraud. That record and judgment, which foreclosed that issue against appellant, was admissible as an estoppel by judgment, and as proof that appellant relied on the sole defense that the chemists who analyzed the phosphate adopted a wrong method by complying with the custom of the trade. Appellant's contract with the Coronet Company was admissible as tending to show that it was able to purchase phosphate rock of the kind it had agreed to buy from appellee at about half the price fixed in its contract with appellee. That the price was greatly less than appellant had agreed to pay appellee was shown by other testimony, but the Coronet contract, entered into almost immediately after the repudiation of the contract in suit, tended more definitely to show the market price. The Coronet contract made it too plain for argument that appellant's real reason for repudiating its contract with appellee was that it was able to purchase phosphate rock at a price much less than it had agreed to pay.

Finally, it is suggested that the allowance of interest caused the judgment to be for an amount greater than the principal amount claimed in the declaration. But the suit was also for interest due, and so the judgment was not rendered excessive by reason of the fact that it included interest.

The judgment is affirmed.