## GLENS FALLS INDEMNITY CO. v. APPLE & BOND CO.

### No. 3554.

Circuit Court of Appeals, Fourth Circuit.
April 3, 1934.

Roszel C. Thomsen and Walter L. Clark, both of Baltimore, Md., for appellant.

Theodore R. Dankmeyer and Chester F. Morrow, both of Baltimore, Md. (George S. Yost and Niles, Barton, Morrow & Yost, all of Baltimore, Md., on the brief), for appellee.

Before NORTHCOTT and SOPER, Circuit Judges, and BAKER, District Judge.

SOPER, Circuit Judge.

This is an appeal by Glens Falls Indemnity Company, the defendant below, and hereinafter referred to as defendant, from a judgment against it in the amount of $5,000 in favor of the Apple & Bond Company, plaintiff, rendered upon the verdict of a jury. The action was brought to recover damages for the alleged breach of an agency contract under the terms of which plaintiff had been acting as an agent soliciting various forms of casualty insurance for the defendant in Baltimore, Md., and the broad issue between the parties was whether the defendant was justified in terminating the relation.

The contract creating the agency took the form of two separate written agreements, which may for convenience be referred to, as in the evidence below, as the agency contract and the supplementary contract. Both were executed at the same time, however, about March 30, 1929, and concededly they are but parts of the same agreement. The defendant had already established its quota of general agencies in Baltimore, as permitted by the rules of a national insurance bureau, and the agreement was divided as has been indicated so that the agency contract, allowing the plaintiff normal commissions on various lines of insurance, ranging from 10 per cent. to 35 per cent. of net cash premiums, might alone be reported to the bureau, and plaintiff's agency would not have the appearance of a general agency. The supplementary contract entitled plaintiff to the usual 5 per cent. overwriting commission allowed to general agencies and to an additional 5 per cent. as well, with a further provision for contingent commissions of 15 per cent. of any underwriting profits made by the agency.

Both contracts provided that the agency might be terminated at the will of either party upon notice to the other. These provisions were noticed by plaintiff's president during the course of the preliminary negotiations leading up to the execution of the agreement, and objections as to them were made to defendant's local representative. The matter was referred to the home office, and on March 22, 1929, an officer of the defendant wrote a long letter to plaintiff explaining the necessity of the provisions, in which it was said in conclusion: "We must continue our cancellation provision in the Agency Contract, but I will hereby assure you, and this letter may be retained or attached to your contract for future reference that we will not change your commission agreement nor cancel your Agency Contract unless the Insurance Department rules that we must do so, or unless the connection is

discontinued, because of unprofitable experience. * * * " An exception to the admission of this letter, based upon the parol evidence rule, will be discussed hereafter.

In March, 1931, after about two years of apparently amicable relations, the defendant, through its local representative, sent plaintiff a statement of the experience of the agency, which it regarded as showing "unprofitable experience," and requested a mutual termination of the agreement. When plaintiff declined, a formal letter of termination, dated March 18, 1931, was addressed to it by defendant, and this suit followed.

At the trial, defendant's main reliance, though it was also contended that the right of termination was absolute, was upon the experience statement above referred to. This statement, which covered the period from the beginning of the agency to December 31, 1930, consisted for the most part of an itemized account, as to each line of insurance, of the following factors in the business derived from the agency: Total premiums written, commissions incurred, premiums earned, losses paid, losses outstanding (reported and in process of settlement), and losses incurred (the sum of the two preceding items). By dividing the amount of earned premiums into that of losses incurred, a percentage called "earned loss ratio" was arrived at for each line of insurance, a ratio which varied from 22.8 per cent. for plate glass insurance to 155.9 per cent. for workmen's compensation insurance. The aggregate earned premiums for all lines amounted to $61,060.82, and aggregate losses incurred to $41,231.93, so that in the same manner the total or average earned loss ratio was shown to be 72.4 per cent., a result which was intended to show the average rate of loss sustained during the period upon premiums earned during the period. To it were added certain other ratios, as, for commission cost (net commissions ÷ net premiums), 21.3 per cent., overwriting commission, 10 per cent., and management expense 21.3 per cent., all of which were regarded as further expenditures chargeable against the earned premiums of the period. The sum of these various ratios, it will be seen, is 125 per cent., so that the statement showed a loss ratio of 25 per cent. upon the earned premiums derived from plaintiff's agency.

It is not necessary to explain in detail the reasons for computing underwriting profit and loss by this method, for it is shown by testimony on behalf of both parties that the method employed is that ordinarily used by casualty insurance companies. The various factors going into the statement are concededly the customary factors for determining underwriting profit and loss; and it is admitted that the statement constituted some evidence of "unprofitable experience."

Plaintiff's case, on the other hand, was built in the main upon two contentions: (1) That "unprofitable experience" is a matter of degree, and, in view of the fact testified to on its behalf, that casualty insurance companies generally suffer an underwriting loss, a 25 per cent. loss over a two-year period would not justify termination of the agency; and (2) that the term "unprofitable experience" has relation to the actual losses of the company rather than to the underwriting losses of a particular agency, and thus that an experience statement which fails, as does the one here involved, to take into account investment income of the company, in proportion to premiums written by the agency, does not present an accurate picture of its experience.

The defendant moved for a directed verdict on the theory, amongst other reasons, that all the evidence tended to show that the experience of the agency, as shown by the statement, was unprofitable. The District Judge refused this motion, and submitted the issue to the jury in substantial compliance with the plaintiff's second contention as outlined above. The jury were told, in substance, that the phrase "unprofitable experience" must be given its ordinary, commonsense meaning; that the burden of proving unprofitable experience as a justification for terminating the agency was upon the defendant; that the jury must determine whether the defendant's statement of the experience of the agency was a correct statement; and that in determining that question the jury were entitled to decide from all of the evidence whether the statement should have included a pro rata part of the company's investment income. The propriety of this instruction, which was properly excepted to, is the most important question in the case.

■ Preliminarily, it is necessary to dispose of defendant's contention, under its motion for directed verdict, that the right of termination was absolute. It is said that the letter of March 22, 1929, assuring plaintiff that the agency agreement would not be canceled, except for unprofitable experience, etc., is at variance with the plain provisions for termination in both the agency and the

supplementary contract, and that its admission in evidence was therefore a violation of the parol evidence rule. We think it a sufficient answer to this contention that the letter specifically authorized plaintiff to attach it to the contract, and that a clause of the agency contract, providing that the contract should be a complete integration of the agreement between the parties, was stricken out. The parol evidence rule does not inhibit proof of extraneous collateral agreements when the writing relied upon does not on its face purport to be a complete and final statement of the contract of the parties; the partial integration of an agreement does not preclude proof of the remainder. Seitz v. Brewers' Refrigerating Mach. Co., 141 U. S. 510, 517, 12 S. Ct. 46, 35 L. Ed. 837; Keur v. Weiss (C. C. A.) 37 F.(2d) 711; Williston on Contracts, § 633, p. 1225; Wigmore on Evidence, § 2430, p. 307. The letter here was as much a part of the agreement of the parties as either of its formal parts, and the defendant must be held to have promised neither to change the agreement as to commissions (the supplementary contract) nor to cancel the agency contract, except in the event, among others, of unprofitable experience.

■■■ The issue is thus narrowed to the correctness of the instructions of the trial court wherein the jury were told that the term "unprofitable experience" as used by the parties with reference to the agency of a casualty insurance company should be given its ordinary meaning, and that the jury should decide for themselves whether the statement should have included a pro rata part of the company's investment income. Such an instruction was not unlikely to lead to the conclusion that an agency should have credit for a share of the income in order to determine whether or not its experience had been profitable, and consequently the instruction was clearly prejudicial, if income from investment should have been excluded from the calculation.

It was shown by uncontradicted evidence that it is the custom of casualty insurance companies to compute agency experience in the exact way in which that was done in the experience statement here involved. It is considered that the underwriting operations of a company and its investment operations are entirely distinct, and that the profitableness of an agency must be determined solely upon the basis of underwriting costs balanced against the net returns from premiums; and it is therefore the universal practice to leave out of experience statements any element of investment profits, though the management expenses of the home office, not attributable exclusively to the investment operations, are charged against the agency. We think the conclusion inescapable that the parties contracted with reference to the well-defined custom thus indicated, and that the term "unprofitable experience" was employed by them in its trade significance, as meaning experience computed by the method in common use in experience statements. The general rule of law applied where a custom is shown to exist in a particular trade or business is that the contracts of parties engaged in the business are presumed to be entered into with reference to such custom, unless it is expressly agreed that the custom shall not apply, or it is repugnant to the plain and unambiguous language of the parties. Robinson v. U. S., 13 Wall. 363, 20 L. Ed. 653; Hostetter v. Park, 137 U. S. 30, 40, 11 S. Ct. 1, 34 L. Ed. 568; Kockos v. C. Itoh & Co. (C. C. A.) 288 F. 557; Alabama Chemical Co. v. International Agriculture Corp. (C. C. A.) 35 F. (2d) 907. The suggestion that the success or failure of an agency cannot be fairly ascertained unless all items of income and outgo are taken into account is met by the consideration that, if the item in question is omitted from the statement of all agencies, the standing of any one may be found by comparison with the rest. Conversely, if a certain class or kind of income is added in the case of one agency only, the resulting distortion prevents a fair appraisal of its career.

■■ We are not prepared to say, however, that the defendant was entitled to a directed verdict. There was evidence for the consideration of the jury indicating that the agency was terminated, regardless of unprofitable experience, because the defendant was fearful that charges that it had exceeded its quota of general agencies might be lodged against it with the insurance commissioner of New York. There was also correspondence and other evidence indicating that during the life of the agency the home office was well satisfied with its record. The short period during which it was permitted to function was also a circumstance to be weighed in determining the quality of its work. We do not by any means suggest that this evidence was conclusive, or that the substantial evidence in the case should be ignored, which tended to show that the results of the plaintiff's agency did not com-

pare favorably with those obtained by other agents handling the defendant's lines. We merely hold that the question of profitable experience should have been submitted to the jury without reference to income from investment.

The court below properly charged that, if the termination of the agency was found to be a breach of contract, the measure of damages to apply would be the difference between the amount which plaintiff would have earned under the contract with defendant and the amount which it might be expected to earn under similar contracts entered into with other parties in place of the defendant, over a reasonable period of time; there being no time limit fixed in the agreement. Restatement of Agency, § 455. The contracts which plaintiff was able to procure after the cancellation entitled it to 5 per cent. less than it was entitled to under the agreement with defendant. What would be a reasonable period of time for the agreement with defendant to continue was a question of fact to be determined by the jury, in view of all the circumstances of the case.

Reversed.