**T. L. JAMES & CO., Inc., v. GALVESTON COUNTY, Tex.**

No. 7494.

Circuit Court of Appeals, Fifth Circuit.

Dec. 13, 1934.

Rehearing Denied Jan. 22, 1935.

Dillon Anderson and Henry Malcolm Lovett, both of Houston, Tex., for appellant.

Ralph Crawford, of Galveston, Tex., for appellee.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

Appellant, a contractor disputing three items with the county of Galveston in the final settlement of its contract for the construction of a sea wall, brought this suit to recover them. One, a force account for $174.-74, was conceded to and recovered by it. It lost the other two. To have the judgment it got reformed to include them, it prosecutes this appeal. One of these items for $2,893.-90 is a claim for under-measurement of the piling driven under the wall. It is based on the contention that the contract calling for piles 3"x8"x10' to be paid for at $65 M. F. B. M., i. e., per 1,000 feet board measure, requires payment for them as containing the twenty board feet which they did contain as the contractor bought them in the rough at the mill, instead of, as appellee claims it does, at the lesser footage obtained by measuring them when reduced by tonguing, grooving, and pointing, they stood in the piling wall. Appellee concedes that the amount sued for is due appellant if the piles are to be measured as appellant claims they should be. It concedes further that if the word "actual" were not in the measurement clause of the specifications, appellant's construction should prevail. It insists, however, that being in, it conclusively rebuts appellant's contention that payment should be made for them by the county upon the same basis the contractor has paid for them, the conventional 20 feet to the pile, doing away with the conventional measurement by substituting actual measurement for it. The other item is a claim for $569.40 for 438 dressed piles, 3"x8"x10' containing 20 board feet each, at $65 per thousand. These were driven as side piling to close gaps not intended nor provided by the specifications to be in the piling wall.

As in the case of the first item, the dispute here is not over the amount, but over the theory of recovery. To recover this item, which concededly was not originally contemplated or contracted for, appellant claims that when it was found out how difficult it was to drive the piles forming the piling wall so that there would be no gaps between them, the engineer in charge agreed that instead of pulling the piles out and redriving them,

appellant could fill the gaps by driving side piles. It also claims that the engineer definitely agreed as to the first 50 that they would be paid for, and that they supposed and believed, since all were accepted, all would be paid for. As presenting merely a question of fact, and that not a difficult one, we take this item up first.

The District Judge found, on ample supporting evidence, that in violation of the contract obligation to drive the piles so as to form a solid wall, appellant in some instances in driving them allowed space between; that instead of requiring appellant, as he could have done, to draw these pilings and redrive them, the engineer permitted it to close the spaces by driving side piling. He found, too, that the driving of this piling was the result of appellant's want of care, and that since it was, appellee could not be made to pay for them. The correctness of this finding as to all but the 50 piles, which it is claimed the engineer told appellant he would pay for, cannot, we think, be doubted. We think it was right as to these too, for the evidence shows not an absolute and unconditional agreement to pay for these piles, but, on the contrary, a conditional agreement that if the side piling driven did not run over 50, they would be paid for. Appellant having breached his part of the understanding by driving tenfold the side piling allowed, is in no position to hold the engineer, if it could hold the county, to his part of the bargain. The judgment as to this item is affirmed.

The other item, the measurement of the sheet piling forming the piling wall, is by no means so easily disposed of. In the court below its solution was made to turn on the meaning and force of the single word "actual" appearing in the last sentence of paragraph 38 of the specifications, "Piling"; "The measurement of piling shall be the actual number of board feet of accepted piling in place under the wall."

The District Judge agreed that the terms "Board Feet" "number of Board Feet," are technical trade terms having a definite and accepted meaning among manufacturers of, dealers in, and those having to do with and handling, lumber. That this accepted meaning is that a board, which comes from the sawmill in the rough 3 inches thick, 8 inches wide, and 10 feet long 3"x8"x10', containing 20 board feet of lumber, is still regarded after being reduced in thickness, width, and quantity by dressing, or as in this case by being tongued, grooved, and sharpened at one end for driving, and is sold and paid for as, a 3x8x10 containing 20 board feet. He thought, however, that the board feet so ascertained, according to the accepted usage and custom, should be regarded as the nominal board feet in the piles as actually prepared for driving and driven. He thought that the introduction into the specifications of the word "actual" was for the purpose of, and that the whole expression must in law be regarded as, intended to have, and as having, the effect of providing for the actual, instead of the nominal, measurement. He thought this apparent from the face of the contract. He thought, too, that this view was strengthened by the testimony of the engineer as to his intention in writing the word "actual" in and by the testimony and conduct of some of the bidders. He therefore rejected appellant's demand that it be paid by the county on the conventional basis for the 20 board feet in each pile it had paid the manufacturer for, and held the payment to it to the actual cubic contents of the piling wall. He thus permitted the county to pay appellant not as it had paid the manufacturer for the 20 board feet in each pile used, but for the considerably less number of board feet arrived at by measuring the piles as they stood, lessened in the wall, by tonguing, grooving, and sharpening.

Appellant argues that by focusing attention on and bringing this controversy within the compass of the single word "actual" the District Judge has, by the intensity of this restricted regard, so foreshortened the view he took of the case as to prevent his seeing it in whole. It insists that to do this is to bring about a solution by verbalistic interpretation rather than by construction of the contract. It insists that a construction searching for the real understanding on which the minds of the parties met would find it not in this word or in that, but in the whole instrument in the light of the ruling trade practices and understandings imported into it, in respect of which the parties must in law be supposed to have contracted. It argues that such construction makes it clear that the word "actual" was inserted in the specifications for a wholly different purpose, and has a wholly different effect from that ascribed to it by the trial court. It was used, appellant says, not in opposition to nominal or conventional, to import a different basis of measurement into the contract than that universally applying, but to qualify "in place under the wall," and to emphasize that only piling actually in place there would be paid for. It points to the overwhelming testi-

mony of the witnesses as to the commonly accepted meaning and significance in the trade the disputed clause in the specifications has as written, and to the testimony of the county engineer that but for his having put the word "actual" in he would have allowed appellant's claim. ·Pointing out too, in how many other places "actual" is used in the specifications [1] and always to express merely that the things or the time to be paid for shall be used on and made a part of the work, it argues that the only significance of "actual" in the clause in question is to make clear that appellant would be paid, not for piles brought to and attempted to be used on the job, but only for the piles actually driven and in place under the wall. It argues, too, that if the meaning now contended for had been intended, the specifications would have provided not for the measurement of the actual number of board feet of the piling in place under the wall, but of the actual number of board feet in the piling wall. Finally, it argues that if the word was inserted by the engineer, as he testified it was to carry the meaning the county contends for, it is not effective to do so, for in violation of the principle that one intending to use words contrary to accepted trade practices and meanings must make that intention clear, he has not done so. In fact, he has so far failed to do it that all the witnesses experienced in the trade, and knowing its customs, declare that the clause as written does not carry the meaning the engineer claims for it.

When we consider the dealings of the parties, and the contract as a whole as it was made up of the advertisement, the specifications, the bid, the contract itself, in the light of the undisputed testimony as to the conventional significance of the terms "Board Feet," "Number of Board Feet," we are not in doubt that appellant is right on this item.

Section 38, "Piling," provides for round foundation piling and for sheet piling. This section provides: "Any piles split, broken, or excessively broomed in driving shall be removed by the contractor and no payment shall be made for same." For round piling it is provided: "The measurement of piling shall be the actual number of linear feet of accepted piling in place under the wall, plus the linear feet of cutoff of such accepted piles." In regard to the sheet piling, it is provided: "All tongue and grooved sheet piling shall have edges, tongue and grooved dressed to match * * *. The size shall be 3″x8″x10ft long. Piles shall be driven to proper elevation and location as shown upon the plan * * *. The measurement of piling shall be the actual number of board feet of accepted piling in place under the wall." Appellant's bid was for 3″x8″ by 10 feet treated sheet piling $65 M. F. B. M., for 10x20 round untreated piling 60 cents per linear foot. In every step of the proceedings for letting this contract, sheet piling was to be paid for at $65 per thousand feet board measure. In the advertisement for bids for the sea wall, the approximate quantities are set out. Included in these is the item "Sheet Piling, 326 M. F. B. M. Round Foundation Piling, 1540 Lin. Ft." In paragraph 13 of the specifications the following appears: "Quantities which will be used for basis of comparison of bids are as follows," and here the notation as to sheet piling and round piling is as it is in the advertisement. In the bid which was made a part of the contract, the sheet piling was bid for as 3″x8″x10ft. $65 M. F. B. M.

In the contract, it was agreed that: "The contractor for the approximate sum of $98,716 as per unit prices in its bid attached hereto and marked Exhibit 'C' shall furnish materials and perform the completed work, the approximate quantity for such work being sheet piling, 326 M. F. B. M. round foundation piling, 1540 lin. feet." It was further provided there: "All labor, materials, etc. shall be furnished by the contractor in accordance with advertisement marked Exhibit 'B' and bid of the contractor, marked Exhibit 'C', all of said exhibits being made a part of this contract."

Every witness swore, without varying, that all bidders, all contractors, all lumbermen, all architects, all engineers knew and understood that when "Board Measure" was specified as the basis of payment this meant that

---

[1] In section 29. Payment and Compensation for Altered Quantities: It is provided that alterations in plans or quantities may be ordered, and "the contractor shall accept payment in full at the contract unit price, for the actual quantity of work done and no allowance will be made for anticipated profits." In subdivision (a), par. 30, the word "actual" again appears, "The contractor and foremen are actually engaged in such work," and again, "and his actual expenses to the contractor." In (b) "For all material used the contractor shall receive the actual cost of such material," and (c) "Statements shall be filed not later than the 10th day of the month following that in which the work was actually performed."

payment was to be according to the board measure of the lumber, as measured at the mill, and not as diminished by dressing, tonguing, and grooving, it went into the finished work. Appellee does not deny this. It merely claims that by the creeping of the word "actual" into the measurement clause of the specifications, all of this conventional understanding was made inapplicable. It claims that these specifications as thus drawn provided, as the measure for this particular contract, not the board measure known to the trade and upon the basis of which business in lumber is universally done, but a particular and special kind of measure more favorable to the owner whose agent drew the specifications, more injurious to the contractor. Such a claim, subversive as it is of the common understanding, cannot in any case be maintained unless it is supported by the clearest evidence, for in construing such contracts as this, courts must take them as business men generally take them, as entered into upon the commonly accepted understanding of those who do this kind of business, unless the contrary is clearly made to appear. Restatement, Contracts, §§ 246, 247 and 248, particularly subdivision 2 thereof. Gulf Production v. Cruse (Tex. Com. App.) 271 S. W. 886; Alabama Chem. Co. v. Int. Agricultural Corporation (C. C. A.) 35 F.(2d) 907; Glens Falls Indemnity Co. v. Apple & Bond Co. (C. C. A.) 69 F.(2d) 695; Lamborn v. Blattner (C. C. A.) 6 F.(2d) 435.

If, then, any meaning and effect can be ascribed to the word "actual" other than one depriving the words with which it is associated of their common meaning, this must be done. We think it plain that it can be. We think it was intended by the use of the word "actual" to emphasize that no piling should be counted in the measurement except those actually driven and accepted in the wall. There should be no payment for piling broken, destroyed, or on the job not driven.

Further, if any doubt might arise as to the proper construction of the measurement clause of the specifications, if it stood alone, that doubt is dispelled in favor of appellant's contention by the use throughout, in the preparation for and in the making of the contract, of the symbols "M. F. B. M." and by the bid made a part of the contract, to furnish 3″x8″x10′ piles at $65 per thousand feet board measure; not board measure after tonguing, grooving, and pointing had been done, but board measure as that term is used and accepted in the trade.

The judgment is ordered reformed by adding to it the amount of the sheet piling item, and as reformed is affirmed.

On Motion for Rehearing.

PER CURIAM.

The taxation of costs in the District Court being within its sound discretion, the motion to retax as to these costs will be denied.

The motion to retax the costs of appeal will be granted, and the judgment will be amended to tax all of these costs against appellee.

The motion for rehearing is denied.